## LOU MOORE V. THE STATE.

### No. 1661. Decided April 26, 1899.

**1. Exclusion of a Question—Bill of Exceptions.**

A bill of exceptions to the exclusion of a question, to be sufficient, must show the object of the testimony and what the answer of the witness would have been or what was expected to be proved by him.

**2. Same.**

It is not error to exclude a question predicated hypothetically on the prior statement of a witness on his examination in chief, where the question assumes facts not stated in, nor shown to exist, by the said examination in chief.

**3. Identification of Accused—Cross-Examination of Witness.**

Where a State's witness, after testifying that he had gone to the jail and picked out defendant from among a number of other men, was, over defendant's objection, asked, "If he had not been sent to other places to look at other men who had been arrested, to see if he could identify them," to which he answered, "I went to several places; I did not identify anybody else; other people were turned loose when I declined to identify them;" Held, the testimony was illegal and irrelevant. The question was whether the witness had identified defendant, and not whether he identified or failed to identify someone else; and the credit of the witness could not be reinforced as to his identification of defendant, by the fact that when he failed to identify other persons the officers turned them loose, because he had failed to identify them. It was error to admit such evidence.

**4. Murder of an Officer Attempting an Arrest for Robbery—Evidence.**

On a trial for the murder of an officer in his attempt to arrest defendant and others for the robbery of a store, it was competent and admissible to prove that defendant and others had agreed, before they left the Indian Territory to come to Texas, to rob storekeepers; such testimony serving, in connection with other testimony, to identify defendant as one of the parties who had committed the robbery for which the officer was attempting his arrest.

**5. Examination of a Witness—Leading Questions.**

It is competent for the prosecution to put leading questions to a witness who is brother-in-law to defendant, and who manifested unfriendliness towards the State.

**6. Attempted Arrest—Evidence.**

On the trial for the murder of an officer while attempting to arrest defendant for robbery, it is competent to prove by the sheriff that he did not procure a warrant for the arrest because he did not have time.

**7. Testimony of Sheriff—Harmless Error.**

The testimony of the sheriff, that after the murder he had located defendant in several counties, if erroneous, was harmless, where the other evidence showed that defendant was in said counties after the homicide.

**8. Murder in Resistance to Arrest—Charge as to Lesser Degrees of Homicide.**

On a trial for the murder of an officer, who was attempting defendant's arrest, where none of the witnesses were near enough to hear what was said or done by the parties at the time of the homicide, the court should have charged upon murder in the second degree. The very fact that what was said and done at the crucial point of the attempted arrest was unknown, would necessitate the giving of a charge on the lower degrees of felonious homicide.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

Appeal from a conviction for murder in the first degree; penalty, imprisonment for life in the penitentiary.

Appellant was charged by the indictment with the murder of Ad

Pate, on the 9th day of September, 1895, by shooting him with a pistol. The indictment contained three counts: (1) Murder; (2) accomplice to murder, and (3) accessory to murder.

The court submitted only the issue of murder as laid in the first count.

The opinion states all the essential facts of the case.

*Cunningham & Cunningham* and *McCollum*, for appellant.

*Robt. A. John*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life; hence this appeal.

The testimony for the State shows, substantially, that appellant, Joe Ferguson, Lorran Cady, Jack Nelson, and Jack Moore, a brother of appellant, in 1895 were living in the Indian Territory. The Moores and Cady had formerly lived in Texas, in Llano County. About the 3d of September said parties left the Choctaw Nation, in the Indian Territory, in the vicinity of Coalgate, for Texas. Lou Moore and Jack Nelson left on foot, perhaps a day before the others. Lorran Cady, Jack Moore, and Joe Ferguson left in a hack. They were to meet in Dallas, Texas. Their mission to Texas was to rob Dutch storekeepers in southwest Texas. On the 8th of September all the parties arrived at Dallas. About 12 o'clock on the 9th, Jack Moore, Joe Ferguson, and Jack Nelson left Dallas, with the hack, on their way west. Some time on that evening, Lorran Cady and Lou Moore (defendant) left Dallas for Eagle Ford on foot. About nightfall they went to the store of one Joe Meeks at Eagle Ford, six miles west of Dallas, and robbed him of some money; said parties being armed with pistols. They immediately left the store, going west in the direction of Fort Worth. Meeks at once went to the house of Bradshaw, who lived some 200 yards distant, procured him, then got his buggy, proceeded to the telegraph station near by, and telegraphed to Ben Cabell, the sheriff, at Dallas, to meet them at the sheriff's office; and then proceeded rapidly to Dallas. On their arrival they were met by the sheriff and Ad Pate, a deputy sheriff. As speedily as possible, the sheriff detailed Pate and Meeks to go out on the Commerce Street bridge road, which led in the direction of Eagle Ford, while he and Bradshaw went out on the Texas & Pacific Railroad trestle. They were to meet about a mile west of Dallas, where the Eagle Ford Road crosses under the Texas & Pacific track. The sheriff and Bradshaw went on foot on the trestle track, while Meeks went in his buggy, and Pate rode one horse and led another for Cabell across the Commerce Street bridge. When Pate and Meeks had proceeded about half way across the bridge over the Trinity, they met two footmen coming into Dallas. As soon as they passed them, Meeks told Pate that they were the men. Pate handed the bridle of the horse he was leading to

Meeks, who in the meantime had stopped his buggy, and immediately turned, and rode back, and overtook said two parties about the time or just as they got off the bridge at the foot of Commerce Street. He attempted to arrest them, when they fired upon him. He fell from his horse, and immediately expired. The parties fled down the river. No trace of them could be obtained that night. Early the next morning it was discovered where one of the parties had crossed the Trinity River, leaving a pair of boots on the bank, and a knife was also found there. There was testimony tending to identify the boots and knife as Lorran Cady's. Lorran Cady, about two months afterwards, was captured in the Indian Territory by United States marshals. He resisted arrest, and was shot, and seriously wounded. He was taken to Paris, and there, after a week or so, died from his wounds. Lou Moore (defendant) was captured about two months afterwards at Waco, Texas. Jack Moore was also captured, but Joe Ferguson and Jack Nelson have never been arrested. Lou Moore was convicted as a principal, and the critical point in the case is as to his identification. Defendant introduced some evidence on this phase of the case, but mainly relied on the weakness of the State's case.

Appellant's first bill of exceptions is as to the refusal of the court to admit certain testimony on the cross-examination of Joe Meeks. The bill states: "That on his direct examination said witness testified that a short while after dark he was robbed in his store at Eagle Ford, six miles from Dallas by two men; that he immediately went to Bradshaw's, a couple of hundred yards, and got Bradshaw and his buggy, and drove as fast as they could to Dallas, stopping only long enough at Eagle Ford to send a telegram; went to the jail at Dallas, and stayed there about four minutes; then to the courthouse, and stayed about fifteen minutes for the sheriff; and ten minutes talking to the sheriff, and then back to the jail, one and one-half blocks, and immediately to the bridge, where he met two men walking leisurely along towards Dallas, not panting or apparently excited; that he recognized them from their size and appearance as the men who robbed him; that the men who robbed him left Eagle Ford on foot, going in the direction of Fort Worth, and from Dallas." On this state of case defendant asked the witness on cross-examination the following question: "Do you mean to tell the jury that a man can come walking from Eagle Ford, and get here by the time you can trot a fast trotting horse under whip, go to the jail and stay four minutes, and get back to the courthouse and stay twenty-five minutes, then back to the jail, and go from there to the middle of Commerce Street bridge, and meet the man coming from Eagle Ford on foot?" On objection, this question was excluded by the court. This bill, in order to be complete, should have shown the object of introducing said testimony, which it does not do. But concede that the object of appellant in asking the question was apparent, he fails to show what the answer of the witness would have been, or what he expected to prove by him. And more than this, the question is not an accurate presentation

of the hypothetical case as predicated on the statement of the witness; that is, it assumes facts not shown to exist from the examination in chief. The question assumes that the horse driven was a fast trotting horse, and was driven under whip, and that the parties coming on foot from Eagle Ford to Dallas walked all the way, which the statement of the witness on his examination in chief does not show. More than this, it is not shown how far it is from the jail to the bridge. Nor, as an important factor, if the answer to the question was to mean anything in favor of defendant, are we apprised as to the time when said parties (who, when Meeks last saw them before leaving his store, were going in the direction of Fort Worth, and away from Dallas), may have changed their course, and returned to Dallas. On every account we fail to see how the court could have erred in excluding the question as put.

When Andy Scott, a witness for the State, was on the stand, the bill of exceptions shows that he was asked the following question, to wit: "I will ask you if they sent you to other places to look at other men who had been arrested, to see if you could identify them?" Appellant objected to this question, "because it was irrelevant, and prejudicial to the defendant, which objection was overruled, and the witness answered: 'I went to several places. I did not identify anybody else. Other people were turned loose when I declined to identify them.'" The answer was objected to on the ground that it was irrelevant, and prejudicial to defendant. To this bill is appended the following explanation by defendant: "That said Andy Scott had, on his direct examination, testified at great detail to his having gone to the jail, and picked out the defendant from among a number of men, about two months after he saw the two men on the road, as one of the men he saw; and also to his having gone to Paris about the same time, and recognized Lorran Cady as the other man, the State's testimony being that Lou Moore and Lorran Cady committed the robbery and did the killing." The court explains this bill as follows: "This question and answer was made on redirect examination, and after defendant on cross-examination had sought to show by the witness that he had identified defendant because he was in jail, and pointed out to him as one of the men who killed Ad Pate, and otherwise tried to make the witness admit the weakness of his identification, and that he was careless, and identified the first man pointed out to him as a suspect, and this testimony, complained of in this exception, was relevant to rebut this theory." The objections here urged are "that said testimony was irrelevant, and prejudicial to the defendant." Irrelevant, in legal parlance, means, having no legitimate bearing or pertinency to the question at issue. If testimony is relevant, it has a legal bearing to prove the issue; if irrelevant, it has not. The fact that witness went to several other places, and failed to identify other persons confined in said places, would not be legal testimony tending to show that his identification of the defendant was entitled to any more weight or credit. The question was whether or not he identified the defendant, and not whether he identified or failed to identify some one else.

We do not believe this was legal testimony tending to identify the defendant, though, to the ordinary understanding, this illegal testimony might have great weight as suggesting that, inasmuch as appellant failed to identify other persons as the perpetrators of the robbery and murder, when he did identify defendant, who was in jail, his failure to identify others lent more cogency and force to his identification of defendant as the person. The credit of this witness is further reinforced by the admission of the further fact that when he failed to identify other persons the officers in charge of them had so much confidence in his testimony as to identity that they immediately turned such other persons loose. The important question in this case was as to the identity of appellant, and the witness Scott was an important witness as to his identity, and to permit him to be reinforced by this illegal character of testimony was erroneous. Reddick v. State, 35 Texas Crim. Rep., 463.

Appellant objected to the examination of Jack Scott by the court. We do not think the questions were proper, but the witness denied making the statements on the previous examination which the court would seem to attribute to him, and no attempt was made to impeach him as to this matter. We are not prepared to say that the manner of the court, or his assuming that the witness had so testified on a previous trial, was calculated to injure appellant.

In our opinion it was competent for the State to prove by the witness W. B. Elzy that appellant and his brother, Jack Moore, Jack Nelson, Lorran Cady, and Joe Ferguson, agreed, before they left the territory to come to Texas, and rob Dutch storekeepers in southwest Texas. Said evidence was legitimate as showing their purpose in coming to Texas, and served to show appellant's mission in being at Dallas; and, as he had come to rob storekeepers, it was likely that he would engage in the enterprise of robbing Meeks; and serves, in connection with other testimony, to identify him as one of the parties who robbed Meeks at his store. The fact that the question was put in a leading form is explained by the court on the ground that said witness was a brother-in-law of the defendant, and manifested an unfriendliness towards the State.

Nor was there any error in permitting the State to prove by Ben Cabell that he did not procure a warrant for the arrest of the men who committed the robbery because he did not have time. The bill does not show that, in connection with said testimony, he did not state the facts and circumstances surrounding his attempt to arrest said parties.

While the testimony of Ben Cabell, the sheriff, to the effect that he located appellant after the homicide in several places, to wit, in Kerr, San Saba, and Kimble counties, may have been error, and inadmissible, still we fail to see how said testimony was injurious to appellant. The evidence shows that after the homicide he was in said counties.

Appellant complains because the court failed to instruct the jury on murder in the second degree and on manslaughter. We have examined the record carefully in this connection, and, in our opinion, the court

should have given a charge on murder in the second degree, and probably also on manslaughter. The court gave a charge only on murder in the first degree, and in that connection required the jury to believe that appellant, either by himself or with Lorran Cady, had robbed Meeks on that night, and that they were in the act of escaping, and that the deceased was attempting to arrest them in a legal manner, and that they resisted his attempt to make the arrest, and that in such resistance they fired upon Pate, the officer, and killed him. This charge was very proper as far as it went. But the fact that no witness testified as to what was said or done at the time of the homicide would suggest the propriety of his charging on murder in the second degree. Meeks and McGovern were the only witnesses who testified on this point. Meeks testified substantially: That he and Pate had started across the Trinity Bridge, which leads out from Commerce Street in Dallas. When they got about half way across the bridge, two men passed them on foot, going into Dallas. That when they passed he told Mr. Pate, the officer, that they were the men. Pate gave the bridle of the horse he was leading to the witness Meeks, and immediately turned in pursuit of the two men. He overtook them after they had gotten off of the bridge. They had been gone a minute or so before witness heard the shooting. Did not hear what the officer, Pate, said to the men. That when he got back there, Pate was dead on the ground, and the men had run away. McGovern testified that he was riding into Dallas, and leading a horse; that he passed Meeks in the buggy about the middle of the Commerce Street bridge, and about the time he got off the bridge he came up with the two parties on foot, and with the officer, who was riding on horseback; that he saw the man on horseback ride up to the two men, and saw the flash of the pistol; that he could not tell who fired the first shot, because the horse he was leading was circling around the one he was riding; that it seemed to him that all three of the men were doing the shooting. This witness heard nothing that transpired between the parties. Now, if it be conceded that the officer had a perfect right to arrest the parties who committed the robbery of Meeks at Eagle Ford without a warrant (and we do not believe there is any doubt as to this matter), and that the two men who crossed the bridge were the identical parties who robbed Meeks, then the testimony fails to show the manner in which their arrest was attempted. If the officer used more force, drew his pistol, and demanded the surrender of the men, and they became alarmed and agitated, and under such circumstances formed the intent to kill, this may have been a killing upon implied malice, and consequently murder in the second degree. Again, if the officer rode up to the men, and without notifying them of his purpose, drew his pistol, and the men became alarmed and agitated, and drew theirs, and then formed the intent to kill the officer, but acted not in their necessary self-defense, they may have been guilty of a lower degree of homicide. The very fact that the record leaves us in the dark as to what was said and done at the crucial

point of the attempted arrest would suggest the necessity on the part of the court to have given a charge on the lower degrees of felonious homicide. See Blocker v. State, 27 Texas Crim. App., 16; Jones v. State, 29 Texas Crim. App:, 338. For the errors discussed abovê, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*