## J. B. BOWEN V. THE STATE.

### No. 2978.    Decided October 12, 1904.

**1.—Murder in Second Degree—Evidence—Conspiracy—Rule as to Acts of Co-conspirators.**

The old rule, that a conspiracy must be established before evidence of conspirators, made in the absence of a defendant, could be introduced against him, is not now in vogue, but such evidence may be introduced in the first instance, the prosecution undertaking to show a conspiracy. If there is no testimony tending to show such conspiracy against defendant, the court will exclude all such evidence of conduct and declarations of other alleged co-conspirators; otherwise the issue of conspiracy "vel non" will be submitted to the jury.

**2.—Charge of the Court—Conspiracy—Defense.**

Where the testimony of the State tended to show that the homicide originated on account of a strike on a street railway, that the defendant was a member of a labor union and sympathized with the striking motormen and joined in a conspiracy to aid in carrying out their purpose to stop the running of the cars; that on the night of the homicide defendant was present and participated with others in firing toward the car in which deceased was acting as motorman; and the defendant denied participating by act or word in the homicide or conspiring to do violence to persons employed to operate such cars, and that he was not one of the striking motormen, the court should have properly submitted both the theory of the State and the defense.

**3.—Evidence—Relevant and Irrelevant.**

Where the defendant was charged with conspiracy in the murder of deceased, which conspiracy grew out of a strike on a street railway, the State could introduce in evidence the acts and declarations of persons shown to have participated with appellant in a purpose to prevent the running of the street cars of said railway by non-union men, which were done in furtherance of the common design; but not merely narrative testimony of something said or done by others, not in furtherance of the purpose of the conspiracy or reasonably calculated to have that effect.

**4.—Same—Irrelevant—Error—Not Cured by Withdrawal.**

Where the court admitted testimony in regard to the stoppage of cars by unknown personos cutting trolley wires, etc., of which there was no evidence tending to show that such persons were acting with appellant who was charged with murder growing out of a street railway strike as member of a labor union, there was reversible error, notwithstanding such testimony was withdrawn by the court.

**5.—Same—Hearsay and Incompetent Testimony.**

When a State's witness had testified that he identified defendant as the person whom he saw firing, and there was no attack upon such identification, it was error to permit said witness upon re-examination by the State to further testify that he was in the grand-jury room when defendant was brought in by one of the deputy sheriffs, and that after defendant was asked if he had been before the grand jury and replied, yes, and after he left said room, witness said in presence of the grand jury that defendant was one of the men who had done some of the shooting on the night of the homicide and that witness was interorgated by the grand jury whether defendant was the man who did the shooting.

**6.—Same—Unconnected Incident Inadmissible.**

It was error to admit testimony that the railway company intended to start out cars on the night before the homicide, where there was no testimony connecting defendant with knowledge of such intention.

**7.—Same—Co-conspirators—Res Gestae.**

Conduct and actions of an alleged co-conspirator immediately after the shooting and while he was on the ground were part of the res gestæ and admissible, even if defendant was not shown to have been present at that particular time.

**8.—Same—Dying Declarations—Co-Conspirator's Identification.**

Testimony of statements of the deceased, not qualified as dying declarations, with reference to his identification of one of defendant's co-conspirators whom the State's testimony showed co-operative with defendant in the homicide, was inadmissible and should have been excluded.

**9.—Same—Neither Original Nor Impeaching Testimony.**

What defendant stated in the grand jury room, not having been duly warned, could neither be introduced as original nor as impeaching testimony.

**10.—Charge of the Court—Principals.**

It was error to charge that one conspiring to commit an offense would be guilty as principal whether he was present or not.

**11.—Same—No Evidence to Support.**

Where there is no evidence to support a charge that defendant would be guilty if he aided or encouraged in the homicide and was present whether he was armed or not, there is reversible error.

Appeal from the District Court of McLennan. Tried below before Hon. Sam R. Scott.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion sufficiently states the case.

*Baker & Thomas* and *Taylor & Gallagher,* for appellant.—1. All the testimony complained of in these assignments of error was hearsay and highly irrelevant to any issue in this case, and the appellant was not connected therewith, in any way, nor was he shown to have indorsed the same, nor did he have any knowledge of the same, and the admission of the same was positive error.

2. All the testimony above complained of was calculated to inflame the minds of the jury and to prejudice them against the appellant, who was accused of the homicide of one of the employees of the street railway company, and the great volume of the same, together with the prejudicial character of the same, made its admission material error.

3. This evidence being irrelevant, inflammatory and highly prejudicial to the appellant, and largely hearsay and incompetent for any pur-

pose, the effect of the same after having gone to the jury and having been considered by them during the whole trial, could not be destroyed by any attempt on the part of the court to withdraw the same from their consideration, and such attempt was nugatory and did not and could not cure the injury inflicted upon this appellant thereby.

4. It was the duty of the court to correct the error committed by allowing the introduction of said testimony, at the earliest possible moment, and after all the testimony was in, the court could have known and seen that this testimony was incompetent, irrelevant and prejudicial, and should have at once withdrawn the same upon the request of appellant's counsel, which he failed to do and in which failure he committed material error.

5. The court having admitted said incompetent and prejudicial testimony, and the same having been considered by the jury, committed further error by allowing it to remain before the jury during the whole of the argument, and permitting the State's attorneys, Neff and Cross, to comment thereon, and to emphasize the same in their speeches before the jury and the permitting of the same over the objection of the appellant, was material error.

6. The court attempted to withdraw said incompetent and irrelevant testimony from the jury by a few brief words near the end of a long and elaborate charge, and the same was insufficient to properly impress upon the jury the importance of dismissing said testimony from their minds, and refusing to consider the same in making up their verdict, and said attempt to destroy the effect of said illegal testimony, was insufficient and nugatory, and could not and did not cure the error nor prevent the injuries to appellant caused by its introduction.

7. The court having admitted said testimony and permitted it to be commented on, and having attempted to withdraw the same from the jury by said insufficient charge, further erred in failing and refusing to give to the jury appellant's requested charge in writing No. 7, which explicitly detailed the most injurious of said testimony and instructed the jury especially, to disregard the same, and the comments of the attorneys for the State thereon, and the refusal of said charge by the court was further error.

8. The admission of prejudicial evidence in reference to collateral and independent acts, demonstrations and conduct of other parties unknown to and not shown to be participated in by the appellant on trial, is material error, calculated to prejudice the minds of the jury and the same is not cured by its withdrawal from the jury in the court's charge.

9. Evidence of independent extraneous crimes and affrays, disturbances, etc., are not admissible against accused unless it is shown that he is in some way connected therewith, and not then unless it be shown that said crimes, affrays, disturbances, etc., are in some way relevant to or connected with the issue on trial. 1st Greenleaf on Ev., sec. 52; Welhousen v. State, 30 Texas Crim. App., 623; Bluman v. State, 33 Texas Crim. Rep., 43; McCandless v. State, 42 Texas Crim. Rep., 58; Barth

v. State, 39 Texas Crim. Rep., 381; Richardson v. State, 33 Texas Crim. Rep., 518; Williford v. State, 36 Texas Crim. Rep., 414; Gaines v. State, 38 Texas Crim. Rep., 202; Demry v. State, 53 S. W. Rep., 853; Railway v. Levy, 59 Texas, 542; Faulkner v. State, 65 S. W. Rep., 1093; Durham v. State, 76 S. W. Rep., 563.

The court erred in refusing to grant the motion of appellant at the conclusion of the testimony in this case, to exclude and withdraw from the jury all of the testimony of all the witnesses in this case placed upon the stand by the State, who undertook to detail divers and sundry declarations, threats, affrays and acts of violence, including the alleged assault of Tennison upon the motorman, and Tennison's abuse of W. S. Rathell, superintendent of the street car company, and reputed threats of Tennison to the State's witness, Prather, and the declarations of the defendant, Ripley, to the witness, Carper, and the declarations of an unknown ex-motorman to the witness, Blair, and the borrowing of a pistol from the said Blair by the unknown ex-motorman, and the holdup of cars by unknown parties, and the cutting of street car wires by unknown parties, and the use of dynamite. For the reason that said testimony was collateral testimony, involving distinct and independent crimes committed by unknown persons, and the same was immaterial, irrelevant, and the same was prejudicial to the rights of the defendant in this case. Renner v. State, 65 S. W. Rep., 1102; Lyons v. State, 30 Texas Crim. App., 642; Blain v. State, 30 Texas Crim. App., 702.

The court erred in permitting the State to prove by the witness, Tom Blair, over the objection of the defendant, that he, the said Blair, identified the defendant, Bowen, in the grand jury room, as the man he saw shooting on the night of the killing. For the reason that the defendant was under arrest at the time, and was not actually present when Blair told the grand jury that he was the man, and after the said witness, Blair, had delivered his evidence, had been cross-examined by the defendant, the court erred in refusing, on motion of the defendant, to exclude this evidence from the jury. For the reason that the said evidence of the said Blair, was hearsay, self-serving, and was introduced for the purpose of bolstering up the said Blair as a State's witness before the grand jury in violation of the rules of evidence. Wharton on Ev., 571; Bailey v. State, 9 Texas Crim. App., 98; Ricks v. State, 19 Texas Crim. App., 308; Walker v. State, 17 Texas Crim. App., 16; Williams v. State, 24 Texas Crim. App., 637; Jones v. State, 38 Texas Crim. Rep., 87; Conway v. State, 33 Texas Crim. Rep., 327; Doucette v. State, 45 S. W. Rep., 800; Red v. State, 46 S. W. Rep., 408; Riojas v. State, 36 Texas Crim. Rep., 182; Kepper v. State, 8 Texas Ct. Rep., 852.

The court erred in permitting the witness, Erwin Clark, over defendant's objection, to testify as to declarations made by the motorman, Hays, after the shooting and before the death of said motorman, in reference to Bowen and Tennison. Said testimony being hearsay

evidence, and not a part of the res gestæ, and the statement in reference to Tennison not being made in the presence of the defendant, Bowen, and for the reason that said defendant was under arrest at the time he was carried before the deceased, it was without his consent and against his will, and especially did the court err in permitting the witness, Clark, to state to the jury that the deceased said that "Tennison resembled the man who did the shooting." Code Criminal Proc., art. 715; Kunde v. The State, 22 Texas Crim. App., 65.

The court erred in permitting the witness, George Griffiths, a member of the grand jury, over the objection of the appellant, to testify as to what the defendant, Bowen, said in the grand jury room, "That he saw no shooting from the Merrick corner." Said testimony not being admitted as a confession of guilt, the same was improper and irrelevant and was hearsay testimony and was immaterial and was therefore not proper as impeaching evidence.

The court erred in that portion of its written charge delivered to the jury as follows:

"Was the act done in pursuance of a common intent, and in pursuance of a previously formed design, in which the minds of all united and concurred? If so, then the law is: All are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design, and intent of all, whether in point of fact, all were actually bodily present, on the ground when the offense was actually committed or not."

Because the law of principals requires, when applied to the facts of this case, not only the concurrence of the minds, of the parties, but their presence and their actual participation. McAlister v. State, 76 S. W. Rep., 760; Criner v. State, 53 S. W. Rep., 873.

The court erred in that portion of. its written charge to the jury which stated in effect that the defendant might be guilty, whether armed or unarmed, whether he fired a shot or not, if he was actually present and "aided by acts or encouraged by words," the person or persons actually shooting; said charge being unwarranted and uncalled for by any evidenc adduced upon the trial, there being no testimony tending to show that the defendant, during the entire melee, by any acts done, or words spoken to his co-defendants, or anyone else, encouraged the offense charged.

*Howard Martin,* Assistant Attorney-General, and *O. H. Cook,* for the State.—On the proposition of admitting testimony to prove a conspiracy: Cox et al. v. State, 8 Texas Crim. App., 254; Smith v. State, 17 S. W. Rep., 552; Kelly v. People, 55 N. Y., 565; Burrell v. State, 18 Texas, 713; Preston, 4 Id., 186; 1 Bishop Cr. Law, sec. 432; 2 Wharton Cr. Ev., 1205; Loggins v. State, 12 Texas Crim. App., 65; Harris v. State, 31 Texas Crim. Rep., 411; Pierson v. State, 18 Texas Crim. App., 524; Blain v. State, 26 S. W. Rep., 63; Hudson v. State, 66 S. W. Rep., 668.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years. The theory of the State was that this homicide originated on account of trouble between the Citizens Railway Company, in the city of Waco, its officers and employees, and the striking employees, who had formerly been employed by said railway in the conduct of its business. The evidence on the part of the State tended to show that on account of some disagreement between said railway and its employees, a strike occurred by said employées, who were union men, on the 27th of September, 1903; that after said strike, the railway company undertook to employ others, who were non-union men, to operate its railway; and that the effort of the striking employees was to prevent said railway from running its cars. This strike is shown to have continued from September 27th up to the time of the homicide, which was committed on the night of October 21st; that after the strike began and up to about October 13th, no effort was made by the company to run or operate its cars, but on that date they undertook to resume service. There is testimony tending to show that they were interfered with in various ways by the strikers and their sympathizers. Trolley wires were cut, and those employed to run the cars were denounced as "scabs," and the cars were otherwise obstructed. The State's testimony further tended to prove that appellant was a member of the Confederation of Labor, and sympathized with the striking motormen, and joined a conspiracy to aid them in carrying out their purpose, to wit: to prevent the company from operating said cars by non-union men. The State further offered proof that on the night of the homicide, which occurred near the corner of Sixth and Austin streets, appellant was present and participated with Tennison, Ripley and others in firing toward the car in which deceased (Hays) was acting as a motorman. Defendant contended, and offered proof to the effect, that he was not an employee of said street railway company, and was not one of the striking motormen; that he did not conspire with Tennison, Ripley and others to prevent the running of said cars or to do violence to persons employed to operate them; though he was present during a part of the time when the firing occurred, where Hays, the non-union motorman, was killed, but did not by word or act participate therein. This is a sufficient statement of the case to discuss the errors assigned.

It may be stated that a great number of the assignments of error relate to the admission of testimony with reference to the conduct of Tennison, Ripley and others during the strike, which was introduced by the State for the purpose of showing a conspiracy to defeat the running of the electric street cars, and indicating the animus of those engaged in such conspiracy. The court received this evidence and afterwards by its charge withdrew it from the consideration of the jury. It is contended by appellant that this evidence was wrongly admitted on the ground that no conspiracy was shown to exist between appellant

and others engaged in said acts, and that he was not present at the time and did not approve or participate in the same, and that the evidence against him being inadmissible, it was of a character to prejudice him before the jury, and it was beyond the power of the court to withdraw its effect.    On the other hand the State contends that this testimony was admissible, because the testimony tends to show that appellant was a co-conspirator with Tennison, Ripley and others to prevent the running of said cars, and that said conspiracy contemplated violence, the reasonable and probable consequences of which might result in death; and that the acts and declarations adduced in evidence were made pending such conspiracy and were in furtherance thereof.    In considering the questions presented, it may be well to state in advance the rules of law governing the admission of this character of testimony.    The old rule that a conspiracy must be established before evidence of co-conspirators, made in the absence of a defendant, could be introduced against him, is not now in vogue, but such evidence may be introduced in the first instance, the prosecution undertaking to show a conspiracy. Of course, if there is no testimony tending to show such conspiracy against defendant, the court will exclude all such evidence of conduct and declarations of other alleged co-conspirators.    However, if there is testimony tending to show a conspiracy in which defendant participated, but this is controverted by the defendant, the issue of conspiracy, "vel non," will be submitted as a matter of fact to the jury, they being instructed, if they believe a conspiracy is established, in which appellant participated, they can consider the acts and declarations of other conspirators in furtherance thereof, although made in the absence of appellant.    On the other hand, if they do not believe a conspiracy to have been established as against appellant, they cannot consider such other acts and declarations of alleged co-conspirators.    Cox v. State, 8 Texas Crim. App., 254; Chapman v. State, 45 Texas Crim. Rep., 479, 76 S. W. Rep., 477; Wallace v. State, 81 S. W. Rep., 966.    In Cox v. State, supra, this language is used:    "To our minds, a great deal of the trouble, confusion and discussion with regard to conspiracy, where two or more are charged with the commission of crime, might and can be obviated by keeping in mind these statutory provisions.    (Referring to the statute with reference to principals.)    If the parties can be identified at the time and place as joint participants in the commission of the crime, why the necessity of going behind that fact to establish a conspiracy to do the act already accomplished, and for which the law denounces them as principal offenders and liable to punishment as such? Why want a better predicate, or any further evidence even of a conspiracy, if their presence and guilty participation is already established? To us it seems too plain to admit of argument that, when two or more are found acting together with an unlawful intent in the commission of an offense, the common design and acting together makes them ipso facto conspirators,—endows them as a body with the attribute of individuality—merges the conspiracy to do the act in the act itself; and

that the previous acts and declarations of each or any such principal offenders in pursuance of the agreed plan, and tending to throw light upon it or the motive or intent with which it was committed, is and should be received as legal and admissible evidence against each and all, whether indicted, prosecuted and tried jointly or separately." Citing a number of authorities. In Harris v. State, 31 Texas Crim. Rep., 411, this doctrine is further enunciated, and it is there held, that where persons are shown to have acted together as principals, the motive or intent of a co-principal can be used against defendant as evidence of the motive and intent which may have actuated him in participating in the crime. However, there may be cases of conspiracy not reached or covered by the rules of evidence relating to principals. In all such cases we understand the rule of law regulating the admission of acts and declarations of co-conspirators still prevails. Under the law of conspiracy and the introduction of evidence thereunder, we understand a conspiracy must be established during the progress of the trial, and the proof must tend to show that defendant participated therein, and that the crime charged against him was within the scope of the conspiracy. As stated by Mr. Wharton (Cr. Law, sec. 220) : "All those who assemble themselves together with an intent to commit a wrongful act, the execution whereof makes probable in the nature of things a crime not specifically designed but incidental to that which was the object of the confederacy, are responsible for such incidental crime." See this subject discussed in Powers v. Com. (Ken.), 61 S. W. Rep., 735; Spies v. Peo., 122 Ills., 1. If the proof tends to show such conspiracy as above indicated, then all acts or declarations of co-conspirators, made during the pendency of the conspiracy, and in furtherance thereof, are admissible in evidence. Tested by these rules, in our opinion, there was testimony adduced by the State not only to show that appellant acted as a principal in the homicide, but there was testimony also tending to show that at that time he acted in pursuance of a previously formed conspiracy to stop the running of the street-cars, operated by non-union men; and the testimony also tends to show that within the design of the conspirators it was contemplated that they might do acts of violence the natural and reasonable consequences of which result in death. Of course, this view of the case was controverted by appellant, and in submitting the case, the court should have guarded the rights of appellant, as to a conspiracy, "vel non," by instructing them, in effect, if they believed no conspiracy was established as against appellant to obstruct the running of the cars by non-union men; or if they believed there was such a conspiracy, but appellant did not contemplate any act of violence which might naturally and reasonably end in death, then they would not consider or regard the testimony concerning said conspiracy or the acts and declarations of alleged co-conspirators. See Chapman v. State, supra; Wallace v. State, supra. Under the view, as above expressed, all testimony introduced by the State of acts or declarations of persons shown to have participated with

appellant in a purpose to prevent the running of said cars by non-union men, especially after October 13th, and which were made or done in furtherance of the common design, were admissible in evidence against appellant. This would exclude any testimony merely narrative of something said or done by others, but would include any act or declaration in furtherance of or reasonably calculated to carry out the purpose and object of the conspiracy. This would include all the acts of Tennison and Ripley, whom the testimony of the State tends to show were co-conspirators with appellant, not merely narrative of some past transaction, but said or done in furtherance of the purpose and object of said conspiracy, and would also include the acts of any others whom the evidence for the State tends to show were identified with the conspiracy. But the State was not authorized to introduce in evidence against appellant what was said or done by some unknown person, not shown to be acting with appellant and those engaged with him. Consequently, the court improperly admitted against appellant testimony in regard to the stoppage of cars by unknown persons, cutting trolley wires by unknown parties, of which there was no evidence tending to show they were acting with appellant, and perhaps some other testimony on this line, as shown by appellant's bill of exceptions. Under the views above expressed the court should not have withdrawn the evidence of the acts and declarations of those whom the testimony on the part of the State tended to show were connected with appellant in said conspiracy; but the court erred in admitting evidence of others not identified with the conspiracy and not named. The admission of such testimony, notwithstanding its subsequent withdrawal, may have injuriously affected appellant. The error was not cured by its subsequent withdrawal. In this connection we make the observation that the learned judge who tried the case, as indicated by his charges, did so solely on the doctrine of principals, whereas, in our opinion, he should also have embraced the doctrine of conspiracy.

During the trial, appellant excepted to the action of the court, as follows: "State's witness, Tom Blair, being upon the stand, said witness was permitted, over the objection of defendant, to testify to the following facts, to wit: Upon re-examination by the State, the witness stated: 'The grand jury was in session when this shooting took place. Mr. Bowen was in the grand-jury room. I was in the grand-jury room a day or two after the shooting. Bowen was in the grand-jury room, while I was there as a witness. He was brought in and then he was taken out. I identified him in the grand-jury room as the man I saw shooting.' And thereupon, on cross-examination by defendant, it was developed by the statement of the witness, as follows: "When I was in the grand-jury room, Bowen was brought in, in charge of an officer, and then he was taken out of the grand-jury room, and the grand jury asked me if that was the man whom I saw doing the shooting; and I told them he was the man. This is what I meant when I stated that I identified Bowen in the grand-jury room. It was one

of the deputy officers who brought Bowen in the grand-jury room, while I was in there. After he was brought in the grand-jury room, they asked me, if he was the man who did some of the shooting, and I said, "Yes, he is one of the men who did the shooting." They brought Bowen in the grand-jury room, and they asked him if he had been before the grand jury, and he said, "Yes." Nobody asked me if he was the man, until I had said that he was the man. They said to me, "Was that Mr. Bowen?" And I said, "Yes." That was after I had already said so." The defendant at the time the above testimony was offered by the State, objected thereto, for the reason that the same was hearsay and self-serving and that Mr. Bowen, the defendant, was not present at the time the conversation occurred between the witness Blair and the grand jury; and after it had been developed upon cross-examination as hereinbefore stated, the manner in which said identification was made; defendant moved the court to exclude all the testimony of said witness offered by the State as to the identification spoken of by Blair of the defendant Bowen in the grand-jury room, for the reason that said testimony is self-serving, and is introduced for the purpose of bolstering up the said Blair as to statements testified to by him in the court, but the court overruled the defendant's objection to said evidence and permitted the same to go to the jury, and the court overruled defendant's motion to exclude said testimony from the jury, to which ruling of the court defendant excepted," etc. It appears from this bill that the State offered as original testimony evidence of Blair (and his testimony was supplemented by that of other witnesses) as to what occurred in the grand-jury room as to the identification by Blair of defendant (Bowen) as the party he saw firing toward the street car on the night of the homicide and at the time it was committed. Blair had already in his testimony identified appellant as the person whom he saw firing; and this evidence was introduced evidently for the purpose of bolstering up and corroborating his testimony on the point of identification. As stated, this was introduced as original testimony and not in rebuttal of any attack by appellant, to the effect that Blair failed on some other occasion to identify him as one of the parties doing the firing. Under the authorities such testimony was not admissible. Reddick v. State, 35 Texas Crim. Rep., 463; Murphy v. State, 41 Texas Crim. Rep., 120; Moore v. State, 50 S. W. Rep., 942. It is needless to say that Blair was an important witness, as he was one of two witnesses who identified appellant as being at the place of the homicide and participating therein, and any incompetent testimony calculated to support him or lend him credit was prejudicial to appellant.

Bill of exceptions number 4 relates to the intention of the railway company to start out cars on Saturday night before the killing. We do not believe this testimony was admissible, as there was no testimony connecting appellant with knowledge of this intention.

It occurs to us that testimony of the witness Clark as to the conduct and actions of Tennison immediately after the shooting, and

while he was on the ground, were part of the res gestæ and admissible as such, although at that particular time the bill does not show that appellant was present.

We do not believe the testimony of the witness Irvine Clark, and perhaps others, as to what deceased Hays may have said with reference to the identification of Bowen and others when they were brought before him, sometime after he was shot, as presented in the bill, was admissible. The same is not shown to have been the dying declaration of deceased Hays, nor is it shown to be a part of the res gestæ. While he failed to identify Bowen as one of the parties doing the shooting, he stated that Tennyson resembled the man who shot him. As the State's testimony was that appellant co-operated with Tennison in the shooting and aided and advised him in the same, this testimony was calculated to injure appellant.

The testimony of the witness Griffith as to what appellant testified to before the grand jury, to wit: that he saw no shooting from Merrick's corner, might have been admissible if offered to impeach the witness had been warned; but in the absence of any warning given the witness in the grand jury room that what he testified to could be used as evidence against him, was not admissible either as impeaching or as original evidence. Wisdom v. State, 42 Texas Crim. Rep., 579; Parks v. State, 9 Texas Ct. Rep., 821.

The court's charge in defining conspiracy stated, in that connection, that one conspiring to commit an offense would be guilty as a principal whether he was present or not, was erroneous. McDonald v. State, 79 S. W. Rep., 542; Barnett v. State, 80 S. W. Rep., 1013.

Appellant complains of the court's charge instructing the jury that appellant would be guilty if he was present and participated in the homicide whether he was armed or unarmed, and whether he fired a shot or not, provided he aided or encouraged others to do the killing. Aside from the evidence of appellant's presence and engaging in the shooting at the time of the homicide, we fail to recall any fact tending to show any aid or encouragement rendered on his part to others; consequently this charge, not being supported by the evidence, should not have been given.

We do not deem it necessary to discuss other assignments as, in the view we take of the case, the errors already discussed require a reversal. The judgment is reversed and the cause remanded.

*Reversed and remanded.*