## P. F. RIPLEY v. THE STATE.

### No: 3812.   Decided March 6, 1907.

**1.—Murder in First Degree—Evidence—Strike—Conspiracy.**

Upon a trial for murder, where there was no evidence, neither positive nor circumstantial, that a conspiracy had been formed, the acts and declarations of alleged co-conspirators in the absence of the defendant were not admissible.

**2.—Same—Charge of Court—Conspiracy—Converse Proposition—Manslaughter.**

Where upon trial for murder the evidence showed that during a street car strike a rock was thrown at the car upon which the deceased was as a motorman; that two policemen immediately jumped off the car and started in the direction of the alley from which the rock or rocks were thrown, and that then the shooting began from the alley and was returned by the policemen, and that probably the shooting was begun by them, and there was some evidence that appellant fired the shot that killed deceased, the court should have charged the jury that if the intention of the parties with whom defendant acted in throwing the rock, was not for the purpose of killing deceased or bringing on the difficulty, and that defendant returned the fire not in pursuance of the conspiracy to kill, he would not be guilty of a higher grade of homicide than manslaughter.

**3.—Same—Leading and Suggestive Questions.**

Upon trial for murder it was error to permit the State to put leading and suggestive questions.

**4.—Same—Evidence—Arrest—Act of Defendant.**

Upon trial for murder it was error to admit testimony over objection of defendant that he was identified while under arrest as the same party witness had seen passing on the street after the killing.

**5.—Same—Non-Expert Evidence.**

Upon trial for murder it was error to admit non-expert testimony as to the size of certain pistol-balls.

**6.—Charge of Court—Conspiracy—Acting Together.**

Upon trial for murder unless the evidence strongly shows a conspiracy, it is safer for the court to confine the charge to the theory of acting together at the time, omitting the charge upon conspiracy.

Appeal from the District Court of McLennan.   Tried below before the Hon. Sam R. Scott.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The State's case claims that the defendant acted together with other parties in bringing about the death of the deceased in a street car strike at Waco; whereas the defendant claims no participation in the

strike or as conspiring to injure or bring about the death of the deceased. This with the statement in the opinion is sufficient.

*Baker & Thomas, Taylor & Gallagher,* for appellant.—On question of manslaughter: Williams v. State, 7 Texas Crim. App., 396; Hawthorne v. State, 28 Texas Crim. App., 212; Norris v. State, 61 S. W. Rep., 495.

*F. J. McCord,* Assistant Attorney-General, for the State.—On leading question: Kennedy v. State, 19 Texas Crim. App., 632. On question of conspiracy: Stevens v. State, 42 Texas Crim. Rep., 154.

DAVIDSON, PRESIDING JUDGE.—This conviction was for murder, a life sentence in the penitentiary being the penalty imposed for killing Hays.

Exception was reserved to the admission of the testimony of Rathell, Stewart and Prather. Rathell testified that on a certain morning during the strike, which occurred in Waco, Texas, and four days before the killing, John Tennison had a difficulty at the street car station with a man named Hatfield, who was one of the employees of the street railway company as a motorman. Tennison was at the office of Rathell on this occasion, on the pavement in front of the office, and the witness stated that he saw an assault made by Tennison on Hatfield. Just after this assault Tennison accused Wilson, who was Rathell's assistant, with having a pistol on his person, and Tennison tried to get into the office of Rathell to Wilson, who denied that he had such pistol. Tennison insisted that he was armed and kept following him to the door, and finally Wilson closed the door on Tennison and told Rathell to call a peace officer, which was done; that Tennison abused him (Wilson) and tried to get through the door in the office.

Stewart testified that Tennison was at the car office several times during the strike and sought to raise a disturbance; that Tennison was standing at the window of the shed cursing the motorman and most everybody, using vile epithets, and that on one occasion said Tennison raised a disturbance with Hatfield, and knocked off his hat, and kicked him and struck him in the face, and that on one occasion during the strike, at the car station, a few days before the killing he heard John Tennison use vile language toward everybody connected with the street railway company, saying they were damned sons of bitches, and if they would come out of the office he would cut out their hearts and drink their hearts' blood.

Prather testified that between 12 and 1 o'clock of the day of the killing at night, on the corner of 5th and Washington streets, Tennison said to Prather, "You ran the first car in the strike, but you had better not run out the first car at night; if you do, Fall & Puckett will do a good business the next morning." Fall and Puckett were undertakers. That Tennison's manner of speaking was in an angry

tone.   Objection was urged to the introduction of all this testimony. Bills of exception show that at the time of two of the difficulties with Tennison out at the car shed appellant was present.   The court says in his qualification appellant was acting with Tennison.   The statement of facts taken down by the stenographers show and the witnesses Hatfield and Stewart testify that appellant was acting as peace-maker and sought to quell the disturbance and make Tennison desist.   This testimony was admitted upon the theory that there was a conspiracy existing growing out of the street car strike.   Appellant was not a member of the street railway motormen, or in any way connected with the street railway, though he was a member of the Carpenters' Union and in sympathy with the strikers.   The bill of exceptions and statement of facts are in conflict.   If the court, in qualifying the bill, intended to say or convey the idea that appellant was acting with Tennison in the assault, all the evidence of the witnesses present, including those for the defendant and the State, show to the contrary.   If the court intended by his statement that they were acting together to convey the idea that they were sympathizing with each other, and acting together in going to the car shed, this is true, but in the confused condition of the record, and especially for want of clearness in bills of exception, we take it that appellant was not acting with Tennison in making an assault upon the parties or in pursuing Wilson into the shed.   As presented, we are of opinion this testimony should have been rejected.

With reference to the testimony of Prather, we do not believe this testimony was admissible.   Appellant was not present when this conversation occurred and there is no sufficient predicate to show there was a conspiracy to kill, growing out of the street car strike, to admit Tennison's statement to Prather.

Another bill of exceptions was reserved to the evidence of Prather, several days before the killing, to the effect that he saw Bowen on South 4th street driving a delivery wagon, and came across said track in front of Prather, who was acting as motorman of the street car, and that Prather stopped the car and asked him to move off the track, to which Bowen replied, "By God! you had better not run over me." Several grounds of objection were urged to the introduction of this testimony.   The bill is qualified with the statement that Prather was a non-union motorman and was at the time in charge of and operating one of the street cars of the street railway company in the City of Waco, and that Bowen was a codefendant of appellant and heretofore charged as a principal in the killing of Harry Hays, and the evidence was limited by the court in its charge.   We do not believe this testimony was admissible.   Appellant had nothing to do with this; was not there; Bowen was simply a delivery-man from one of the grocers in town and was driving his delivery wagon for the purpose of delivering goods to customers and drove across the track in front of the street car.   This is too remote and is not sufficiently connected up to admit

as the act of one of the co-conspirators. In a general way it may be conceded that the evidence of conspiracy in this case was very weak indeed, if any was shown. The record shows a strike of the motormen of the street railway employees was in vogue at the time, and that Bowen and appellant were sympathizers but were not among street railway employees, and in fact it shows that a great portion of the people of the City of Waco were in sympathy with the strike of the railway employees. All of defendant's witnesses testified in regard to this matter that there was no conspiracy to kill or to do any bodily harm to the non-union men, but that they were opposed to the non-union men being employed by the said street railway company. We understand that a conspiracy can be proved by circumstances as well as by positive evidence, but there must be evidence either circumstantial, or direct and positive, that a conspiracy has been formed in order to admit the declarations of alleged co-conspirators in the absence of the party upon trial, and this must be in furtherance of a common design, whether in word or act. Until this has been shown by some testimony during the trial, the acts of third parties will be excluded. It may be stated further that Bowen had been previously convicted and his case reversed, as shown by a report of that case in the 82 S. W. Rep., page 520, and subsequently acquitted; and the evidence also shows that the case against Tennison, after one or more trials, had been dismissed by the State for want of sufficient evidence to convict. In this attitude of the record, we are of opinion that the testimony set out and heretofore discussed should not have been admitted.

The witness Bruyere was permitted to testify that immediately before the tragedy some one in the crowd with him hallooed, "scab" as the street car was coming along, on which Harry Hays was motorman. Objection was urged to this. Appellant was either in the crowd or near by, but did not make the remark himself, as shown by Bruyere's testimony. Appellant was in position to have heard the remark, and in connection with what followed, it was perhaps not error to admit this exclamation. The facts immediately surrounding the tragedy show that appellant and several of the State witnesses and Tennison and Bowen were together on the corner of the street when the exclamation of "scab" was uttered by some one in or near the crowd. The car passed along down the street in front of them, and when the car reached about the center of the block a rock was thrown at the car from an alley, which struck it. Appellant was not in the alley and in the meantime, according to the testimony of several witnesses, had started home. Some of the witnesses say that other rocks were thrown at the street car, which came to a halt, and two special policemen, Kibler and Clark, immediately jumped off the car and started in the direction of the alley. At this point the testimony varies as to who began shooting. The State's evidence shows that the shooting begun from the alley, which was returned by Clark and Kibler. The testi-

mony also shows that Clark and Kibler began shooting and fired the first shot immediately upon alighting from the car, and that the shots were returned from the alley. There was considerable firing. During this firing, Harry Hays, the motorman, was shot, and the evidence is considerably confusing as to his immediate position when shot, but, be this as it may, the evidence is directly contradictory as to who began the firing. It is claimed that the rock was thrown before the shooting began. After Clark and Kibler had shot into the alley for a while, they returned down the street in the direction of the car, and Kibler met Tennison upon the sidewalk and immediately thrust his pistol against his stomach and threatened to kill him. Tennison threw up his hands and told him he was unarmed and not to shoot him. An examination of Tennison showed that he was unarmed. Clark approached the scene about this time and suggested to Kibler to kill Tennison, but changed his mind and ordered him not to do so. A policeman came up about the time and Kibler undertook to shoot him. The policeman finally succeeded in disarming Kibler. One or two of the witnesses stated appellant fired from the street corner anywhere from one to three shots. The State's contention is that one of these shots killed Harry Hays. This, of course, is not known, but Hays was killed during the firing of the shots.

The court charged the jury in regard to a conspiracy, but did not charge, as we understand, the converse of the proposition if there was no conspiracy to kill, but there may have been an agreement simply to prevent the running of the cars during the strike without the ulterior purpose of killing or inflicting serious bodily injury, he might have been guilty only of manslaughter—or justified, etc. Of course, if there was a conspiracy to kill or to inflict serious bodily injury if necessary to prevent the running of the street railway cars by non-union motormen, and appellant engaged in the difficulty for such purpose which difficulty was brought on in which appellant participated, and the killing occurred, he would be guilty of murder in one of the degrees, or if knowing that a difficulty was precipitated by the street car strikers, in which they proposed to kill or seriously injure Harry Hays or any other non-union motorman in charge of a car, and appellant engaged in that with an unlawful purpose, he would be guilty of murder. But the evidence suggests the theory that he may have engaged in it after the shooting by Kibler and Clark.

The court failed to particularly charge the jury that if the intention of the parties in throwing the rock was not for the purpose of killing or bringing on a difficulty which might end fatally, but that the throwing of the rock was only for the purpose of frightening the non-union motormen and to prevent them from running the cars or simply by this means to deter them from such service, and they were then fired upon and returned the fire, and not in pursuance of a conspiracy to kill, they might be guilty of no higher grade of homicide than manslaughter. Under the peculiar facts of this case, the court

having submitted the theory of conspiracy and of acting together from the standpoint of a homicide of the degree of murder, the converse of the proposition here should have been given; to wit: if they did not act in pursuance of a conspiracy to kill, etc., then they would look to all the other criminating facts to ascertain if manslaughter was in the case. In other words, where a criminative theory is submitted in the charge, and there are facts showing this might not be true, then the converse of the proposition should always be submitted, because the converse is favorable to the defendant and in consonance with the idea of presumption of innocence and reasonable doubt. Again, if a rock was thrown from the alley and struck the street car, and the city policemen began firing at once, the parties, while not justified in returning the fire, might have their offense, if any, reduced to the grade of manslaughter. It was but a misdemeanor at most to throw the rock at the car, and if they were fired upon for this reason before they began shooting, then although they might have produced occasion of the difficulty, yet the killing might not be murder in the first or second degree. It is made to appear beyond question that appellant was not in the alley and had no connection with the firing from the alley at the city officers, and if he fired at all it was from the street corner, and his mingling in the difficulty occurred after the firing had begun in the alley. Of course, if appellant understood that the rock was thrown, or if the evidence indicated it was thrown for the purpose of producing the occasion to kill any one on the street car, and appellant knowing that fact and engaged in it, he would be guilty of murder, but if the rock was not thrown for that purpose, but simply for the purpose of frightening the conductor so as to prevent him from running the car, or as means of overawing non-union motormen from handling the cars, but with no purpose of bringing on a fatal difficulty, and they resisted by returning the fire of the city policemen, then the issue of manslaughter is in the case. We deem it unnecessary to follow out all the different phases of exception to the charge. What we intend here to decide is that having submitted the issue of murder in both degrees from the standpoint of conspiracy, and bringing on a difficulty for the purpose of killing, under the facts, appellant had a right under the evidence to have the converse of these propositions submitted, including the issue of manslaughter.

There are several bills of exception to the action of the court permitting the State to put leading and suggestive questions which were well taken. Without going into a discussion of these, they should not occur upon another trial. The authorities are more than ample to sustain appellant's contention along this line. See Davis v. State, 43 Texas, 190; Wright v. State, 10 Texas Crim. App., 480; Rangel v. State, 22 Texas Crim. App., 645; Ashlock v. State, 16 Texas Crim. App., 21; Railway v. Hammon, 50 S. W. Rep., 123; Railway v. Dalwigh, 51 S. W. Rep., 500; Bridge Co. v. Cortsett, 75 Texas, 631;

Lentz v. Dallas, 72 S. W. Rep., 59; Able v. Sparks, 6 Texas, 349, and Railway Co. v. Duelin, 86 Texas, 450.

There was some evidence introduced over appellant's objection that he was identified at the city hall as the same man witness had seen passing up North street after the killing. Appellant was under arrest at the time. This testimony should have been rejected under the authorities of Reddick v. State, 34 S. W. Rep., 274; Murphy v. State, 51 S. W. Rep., 940; Moore v. State, 50 S. W. Rep., 942, and Bowen v. State, 82 S. W. Rep., 520.

We do not believe the testimony of Drs. Olive and Curtis as to the size and caliber of the ball, under the predicate laid, should have been admitted. They were not shown to be sufficiently expert in these matters, and especially Dr. Curtis. For instance, Dr. Curtis testified that he never had any particular experience with firearms and never owned a pistol in his life.

Some of the special instructions requested by appellant in regard to manslaughter should have been given, but we have sufficiently discussed the general features of necessary charges or the charges necessary to cover the issues in a general way, without going into particulars and elaboration except in regard to self-defense. There are some questions suggested of more or less importance, which we deem here hardly necessary to discuss. We would suggest unless the evidence is more strongly shown in regard to conspiracy upon another trial, that it will be safer for the court to confine the charge to the theory of acting together at the time, omitting the charge upon conspiracy. In fact, as suggested in the opinion of Bowen v. State, 82 S. W. Rep., 520, and cases there cited, it would seem to be a safer plan to submit the acting together at the time as a predicate for conviction. If the State's case is one of acting together, it would seem unnecessary as a general rule to complicate it with questions of charges on conspiracy. While there may be cases where conspiracy should be charged, yet there are cases where only acting together will form the predicate for the State's case, and where the testimony would suggest either, or both, it occurs to us, a safer plan, to avoid complication and long charges, would be to submit the question that the parties were acting together. A case should be so tried that all unnecessary complications be avoided, and every issue that is favorable to appellant's side of the case be given in the charge, whatever may be the view of the trial court. For our law, in its humane provisions, as a policy of criminal jurisprudence, requires the trial shall proceed upon the idea that all the issues are dependent upon the theory that the accused is presumed innocent until his guilt is proved beyond a reasonable doubt. Many troubles can be avoided, and many errors kept out of the record by keeping this theory strictly in view in criminal trials. The judgment is reversed and the cause remanded.

*Reversed and remanded.*