## JAMES MURPHY, ALIAS WM. JONES, v. THE STATE.

### No. 1782. Decided June 21, 1899.

**1. Change of Venue—Compurgators.**

A motion to change the venue which is not supported by the affidavits of compurgators is not in compliance with the statute, and while the court is authorized to change the venue of its own motion, there is no law requiring the court to summon witnesses and hear proof as to the motion where it is alleged that compurgators could not be obtained on acount of prejudice against defendant, still it will be presumed that the court did its duty and thoroughly investigated the matter.

**2. Continuance—Diligence.**

Where an application for continuance was to prove an alibi and good character by witnesses in distant States, the defendant being without funds and a strange negro, and the State's case was mainly dependent upon alleged confessions to officers, and the attorneys appointed by the court to defend had used all reasonable diligence, but did not have time within which to procure the depositions of said witnesses, Held, the continuance should have been granted.

**3. Remarks of Judge—Special Venire—Bill of Exceptions.**

. Where, on the voir dire examination of the special venire, two of the veniremen were objected to as incompetent because they had heard a certain charge delivered by the trial judge in impaneling the petit jury for the week, Held, the bill of exceptions should have shown that said charge was calculated to influence the jurors on the trial of defendant, and also that defendant had exhausted his peremptory challenges and was compelled to take these jurors.

**4. Confessions—Warning.**

The burden is upon the State to show that proper warning was given a defendant, who was in jail, in order to render his confessions admissible. If there is a suggestion of undue influence or unfairness in procuring it, but the court thinks it admissible, the same should be submitted to the jury with proper instructions regarding their duty as to its consideration.

**5. Murder—Evidence—Identification of Defendant.**

On a trial for murder it is incompetent and inadmissible, as original evidence, to prove by a witness who was present at the killing and only saw defendant for an instant at that time, that subsequently she picked him out and identified him at the jail among several other negroes as the party who committed the murder. Reddick v. State, 35 Texas Crim. Rep., 463.

APPEAL from the District Court of Fort Bend. Tried below before Hon. WELLS THOMPSON.

Appeal from a conviction of murder in the first degree; penalty, death.

Appellant was charged in the indictment with the murder of Oscar

D. Kirkland, on the 2d day of November, 1898, by striking him with a pistol and with some instrument, the kind and character of which is unknown to the grand jury.

The following statement of the important facts in the case, which is substantially correct, is taken from the brief filed in behalf of the State on this appeal:

On the night of November 2, 1898, at his home in Richmond, Fort Bend County, Texas, Oscar D. Kirkland was struck twice on the left side of the head with a pistol by a burglar. One wound, about three inches long, was over the ear and the other was practically on the temple. Mr. Kirkland lingered between semi-consciousness and delirium until the evening of the 4th, when, seized with a convulsion, he expired, with blood pouring from his ears and nose. Mrs. Kirkland, wife of the deceased, stated at the time and subsequently testified, that she was sleeping with her baby in one end of the room and that Mr. Kirkland was sleeping in the other end with their little boy. Between them, however, and practically dividing the room into two compartments, was a curtain which hung from the ceiling to the floor. On the night in question a lamp and fire were burning in the apartment where Mrs. Kirkland slept. The lamp was upon a desk. Her purse was upon the bureau. All doors were closed, but unlocked. About 12 o'clock she was awakened by a slight noise and saw a negro man standing at the bureau. She screamed and sprang out of bed. The man turned and looked at her and then ran through the curtain into where deceased was. After screaming she heard her husband moving in his bed. A second after the negro disappeared behind the curtain she heard the sound of a blow and fainted. She came around presently and began screaming for help. The sheriff of the county, who lived near, was at once called. After he came Mrs. Kirkland found her purse, which had been on the bureau where she first saw the man, on the floor of the room where deceased was. It was lying near the curtain. The sheriff, Parnell, telegraphed the description of the negro, as given by Mrs. Kirkland, to surrounding counties, and in a few days appellant was arrested in Wharton, suspected of the crime, and brought back to Richmond. On being placed in line with several other negroes he was at once selected by Mrs. Kirkland as much resembling the man she saw in her room. She subsequently testified that he did look very much like him,—being very large about the breast and shoulders, with a short neck and stoop like the burglar.

After being in jail a day or so appellant confessed the crime to Parnell, saying that the Kirkland house was covered with vines (as is true); that there were cedar trees in the yard (as is true); that he had entered the house through an unlocked door (all the doors were unlocked); that he went to a bureau and found a purse; the lady awoke and screamed and jumped out of bed; that there was a lamp burning upon a desk or table, and that he ran through a curtain,

dropped the purse, and as a man was getting out of bed struck him with a pistol, and then got out of the room and ran out through a gate and closed and fastened same behind him, and then went to the river (not knowing it was there); threw the pistol in; then partially retraced his steps and heard the lady screaming. He then expressed his willingness to go to the place and show how the whole thing occurred. He lead the way, and before getting there stated that he went in through a front gate which had a weight upon it (as was a fact); and upon arriving at the house showed the door where he entered; showed the bureau; showed how and where he went through the curtain; where he dropped the purse, which was near the spot where Mrs. Kirkland picked it up; showed where the man was when he struck him; showed the gate which he went out of and fastened behind him. He subsequently reiterated this confession to Mr. Rich at Houston.

Appellant was indicted on the 18th of March, 1899, and a few days later made application for a writ of habeas corpus, stating that his case was bailable and demanding bond. The district attorney admitted it was a bailable case, and appellant was allowed bond in the sum of two thousand dollars. He was placed on trial April 6th, and after moving to quash the indictment, for change of venue, to quash the venire, and for a continuance, all of which motions were overruled, plead not guilty.

C. C. *Everett* and R. H. *Woody*, for appellant.

John M. *Pinckney*, District Attorney; L. M. *Williamson*, County Attorney; *Wharton Bates, Spencer C. Russell*, and *Rob't A. John*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder, and his punishment assessed at death, and he prosecutes this appeal.

Appellant made a motion for change of venue, alleging prejudice against appellant in the county of Fort Bend. This was only sworn to by appellant with no compurgators. The application shows, as an excuse for failure to procure the compurgators, that appellant was a strange negro, and friendless, and the case was one of unusual interest, and a certain confession of appellant had been published in a newspaper, and had gone broadcast over the county, and so much prejudice had been engendered against appellant that he could not obtain a fair and impartial trial, and that he could not procure compurgators to make the affidavit for change of venue. This was overruled by the court. Appellant also presented said motion, and asked that the court order proof on the same, and exercise his discretion to change the venue as upon his own motion. This the court declined, and appellant excepted. We can not say that the court committed an error in regard to overruling the application for change of

venue. It was not a compliance with the statute for a change on appellant's motion, for it was not accompanied by the affidavits of compurgators. While the statute authorizes the change of venue on the court's own motion, yet we know of no rule that would compel the court to exercise its discretion. We would further observe in regard to this motion that, while appellant suggested to the court to order proof, the motion does not show that he offered any evidence of any witness or witnesses. While we can not say that the court erred in overruling the application for change of venue, we would observe that the presentation of the question called on the court very strongly to thoroughly investigate the condition of the public mind with reference to the charge against defendant, in order to ascertain whether or not he should exercise his discretion to change the venue of his own motion; and we indulge the presumption that the court did this.

Appellant made a motion for continuance to obtain James B. Dickson and C. C. Spanes, of Phillips County, Arkansas, where appellant was alleged to have been raised, to prove the general reputation of defendant as being a man of peaceful conduct, of unimpeachable character, and of harmless disposition, and further to prove that he had never been guilty of any offenses in Arkansas, and had not left that State on account of any charge. (This was in rebuttal of the alleged rumor that the State would seek to prove this by the alleged confession of appellant.) The continuance was furthermore sought to procure the testimony of Mrs. Boarman, alleged to reside near the town of Donaldsonville, in Ascension Parish, Louisiana. It was alleged that by this witness appellant would be able to prove that he had worked for her in the month of October, 1898, and until the 2d day of November, 1898; that he left her place on Wednesday morning, November 2d; and that it was physically impossible for him to have been at Richmond, in Fort Bend County, on the night of November 2, 1898, the time when the State's evidence would show that Kirkland, the deceased, was killed at his home in said last mentioned county. In this connection defendant showed that this was his first application for continuance; that he had been confined in jail since November; that he was not able to employ counsel; that he was only indicted on the 18th day of March, 1899; that counsel was appointed for him by the court on the 22d day of March; and that such counsel immediately conferred with their client, and set about obtaining all the information possible in regard to his case; that there had been no examining trial, and that the State had studiously kept from defendant a knowledge of the case against him; that his counsel sued out a writ of habeas corpus to obtain bail, and for the purpose of developing the State's case; that the district attorney, in order to defeat the purpose of counsel to obtain a knowledge of the State's case, admitted the case to be bailable, and the court, at his suggestion, refused to allow appellant to examine the State's witnesses, whom he had subpoenaed. That appellant's counsel, from in-

formation derived from their client, wrote to defendant's relations and friends in Arkansas to obtain all the information they could with reference to defendant, but only within the past day or two had they received any reply, and that counsel had therefore not had time to obtain the depositions of witnesses necessary and indispensable to defendant's defense; and that defendant had no means to meet the expenses of hunting up witnesses or taking depositions. In the view we take of this matter, the court should have granted the continuance, or, if the term admitted, at least have postponed the case a sufficient length of time to enable counsel to obtain the depositions of said witnesses. Aside from the corpus delicti (that is, the death of deceased by violence), the State's case depended almost wholly on the testimony of officers as to appellant's confession of the homicide. No witness was produced by the State showing that appellant was in the town of Richmond, Fort Bend County, on the 2d day of November, 1898; and certainly if he could prove by Mrs. Boarman, of Donaldsonville, La., or by anyone else, that he was at Donaldsonville on the 2d of November, it would be very material testimony on his behalf. And, moreover, if appellant could prove by persons who had known him all his life that he had borne a good reputation in the State of Arkansas, where he lived, he was entitled to this testimony. The application shows that, as soon as the court appointed counsel for him, they immediately set about an investigation of the case, and, so far as we are advised, used all diligence necessary to inform themselves, and to endeavor to obtain testimony to meet the State's case, Counsel, as well as defendant, make affidavit to this application for continuance, and in the absence of the statements appearing unreasonable, or of any controversy on the part of the State as to the diligence used, we must assume that the diligence stated is true; and there is nothing to show that the information derived by his counsel as to the facts that they could prove is either unreasonable or untrue. At any rate appellant should have been afforded an opportunity to obtain the testimony sought by him. No doubt, it is important that speedy trials be had in all criminal cases, and that the guilty be brought to punishment, but it is of far more importance that nothing be done in the course of a trial that smacks of unfairness or of undue haste. It may be that appellant can not procure this testimony,— can not prove the facts stated by him; but we can not assume that he could not, and he should have been afforded an opportunity to procure the depositions of these witnesses.

Appellant shows by bill of exceptions that a part of the special venire summoned to try him were present and heard the charge of the court given in the impaneling of the petit jury delivered on the Monday morning preceding the trial. This is the same charge objected to in Furlow v. State (decided at the present term), ante, page 12, and what we said there is applicable to this case. Appellant shows here that two of the veniremen said that they heard said

charge, and they were objected to as incompetent. The court, however, held that they were competent, and appellant accepted them as jurors. Appellant's bill should have gone further, and shown that said charge of the court was calculated to influence the jurors in their trial of the defendant, and should have further shown that appellant exhausted his challenges, and was compelled to take these jurors.

Appellant objected to the testimony of Parnell, sheriff of Fort Bend County, and of Rich, sheriff of Wharton County, in regard to the confessions which they testified that defendant made to them; it being claimed by appellant that defendant at the time these confessions were made, was in jail, and was coerced by such sheriffs, and induced by them and others, by undue influence, to make said confession. From the bills as presented, it would appear that said evidence was admissible. Where a defendant is in jail, or other place of confinement, the burden is on the State to show that a proper warning was given, and that the confessions were freely and voluntarily made, and the court should always see to it that this burden is fully discharged; and, if there is any suggestion of undue influence or unfairness in procuring the confession, still, if the court deems it admissible, the jury should be fully instructed on the subject, and, if it does not appear to them to have been freely and voluntarily made, after defendant being duly warned, they should be charged to reject it altogether.

Appellant objected to the testimony of Mrs. Kirkland, as shown by the following bill: "Be it remembered that on the trial of this cause, on the 7th of April, 1899, after the State's witness, in her original direct examination, Mrs. Kirkland, had testified fully as to the presence of the negro burglar in the residence of the deceased, Mr. Kirkland, on the night of Wednesday, the 2d of November, 1898, the witness testified that on Friday, the 11th of November, 1898, she (the witness), at the sheriff's invitation, went to the jail in Richmond, and entered the jail office, where five or six large negroes were present in line, with their faces away from witness and their backs towards witness. It was thereupon proposed by the State to prove by Mrs. Kirkland, the witness, that witness pointed out and picked out the defendant from said five or six negroes as being the one most resembling the negro burglar who had struck witness' husband. This was objected to in open court by the defendant on the grounds that the said pointing out and picking out by the witness was an after test, and in the nature of a self-serving declaration and act on the part of the said State's witness, and that the proposed testimony was wholly irrelevant, inconclusive, and incompetent for any purpose as original testimony; but the court, over the defendant's said objections and exceptions at the time, permitted said State's witness, Mrs. Kirkland, to make answer, and she did make answer, in substance, that of the said negroes in line in the said jail office, with their backs

towards the witness, that she pointed out and picked out the defend-
ant as looking like the negro burglar who had been in her house on
the night of the 2d of November, 1898; that in general size and gen-
eral appearance, and more particularly with respect to size, breadth,
and depth of chest, did he resemble the negro burglar referred to.
The State's attorney then asked witness whether or not the witness
believed defendant was the man, to which witness replied that she
believed he was the man. Simultaneously with the beginning of said
answer, defendant raised the objection that the witness' belief was
totally incompetent, which objection was sustained. But the court
did not at that time, nor at any other time, verbally or otherwise,
instruct the jury to disregard the said answer.' This bill is qualified
thus: 'The court cautioned and told the jury to disregard the be-
lief of the witness.'" It was entirely competent for Mrs. Kirkland,
in her examination in chief, to state whether or not she then identi-
fied the defendant on trial as being the same person whom she saw
in her room on the night of the 2d of November, 1898; and she was
authorized to give her reasons for such identification,—his size, gen-
eral appearance, etc., or any other facts that enabled her to identify
him; and if she could not be positive as to such identification, she
could state her belief or best impression. But it was not competent
for her to testify that she identified him on other occasions as being
the same person, unless on cross-examination she had been impeached
by showing that, on some occasion since, she had attributed the hom-
icide to some other person than the defendant. We understand this
scenic performance at the jail was offered as original testimony on
the part of the State. This was hearsay and inadmissible. Reddick
v. State, 35 Texas Crim. Rep., 463. The witness was permitted to
state, over appellant's objection, that, at the sheriff's request, she
went to the jail in Richmond, and, entering the jail office, where five
or six large negroes were presented in line, with their backs towards
witness, witness there pointed out the defendant, and selected him
from five or six negroes as being the one most resembling the negro
burglar who had struck witness' husband. While this character of
testimony was not admissible as original evidence, it was eminently
calculated to impress the jury. True, she could not be certain. In-
deed, so uncertain was she that she was only willing to state her be-
lief (which the bill shows the court struck out) that it was appellant.
Yet this scenic arrangement and performance no doubt influenced
the jury to strongly believe that, although she only saw the party for
an instant on the night of the homicide, and then only his back,
shoulders, and side of his face, yet, having picked him out from a
number of other negroes, whose general size only is stated, this cir-
cumstance would be calculated to strongly suggest to the jury that
appellant must be the man, as she could pick him out from the
others; and thus the confessions of appellant made to the officers

would be reinforced by this illegitimate testimony. In our opinion, it should not have been admitted.

There are other questions raised in the record, but they are of a character not likely to occur on another trial, and we will not discuss them. But for the errors pointed out the judgment is reversed, and the cause remanded.

*Reversed and remanded.*