SAM WEAVER v. STATE.

No. 1394.    Decided October 16, 1912.

Rehearing denied November 13, 1912.

**1.—Burglary—Continuance—Want of Diligence.**

Where, upon trial of burglary, defendant's fourth application for continuance showed a want of diligence in securing the absent witness, and it did not appear that his whereabouts was then known or that defendant had made serious effort to learn, there was no error in overruling the motion.

**2.—Same—Evidence—Opinion of Witness.**

Where the witness had testified to the time that he saw the defendant at the hotel and the State's witness had testified the time his house was entered,

and the distance between the two places was shown, it was a question for the jury, and not for the witness, whether defendant could make the trip in the intervening time.

**3.—Same—Evidence—Credibility of Witness.**

Upon trial of burglary, there was no error in asking defendant on the witness stand if he knew of any reason why prosecuting witness would have had him arrested unless it was because he entered his house, to which the defendant answered in the negative. Following Pope v. State, 65 Texas Crim. Rep., 51.

**4.—Same—Evidence—Cross-examination.**

Where, upon trial of burglary, the defendant testified that he was selling a certain medicine and did not know he had to have a license, the State could show, on cross-examination, that he knew he ought to have obtained such license, to test his credibility.

**5.—Same—Evidence—Identification.**

Upon trial of burglary, where the owners of the burglarized house had identified defendant as the person who entered their house, and after counsel for defendant on cross-examination endeavored to break down the testimony of said witnesses as to the identification of defendant, there was no error in permitting these witnesses to testify that the day after the burglary they were called to the police station and there again identified the defendant. Following Reddick v. State, 41 Texas Crim. Rep., 120; Bowen v. State, 47 Texas Crim. Rep., 137, and other cases.

**6.—Same—Rule Stated—Corroboration.**

A witness may detail all facts within his personal knowledge bearing on the identification of the defendant, but other persons cannot be called to corroborate such witness as to prior statements or identification, unless it is sought to impeach the witness in some of the ways known to the law.

**7.—Same—Evidence—Identification—Appearance of Defendant.**

Upon trial of burglary, where the defendant was identified as the burglar by the State's witnesses and it developed on the trial that the appearance of defendant had in a measure been changed, by a change of clothes, etc., there was no error in admitting evidence by these same witnesses that they afterwards identified defendant at the police station. Following Young v. State, 49 Texas Crim. Rep., 207.

**8.—Same—Alibi—Charge of Court.**

Where the court's charge on alibi was in accordance with the form frequently approved by this court, there was no error.

Appeal from the Criminal District Court of Harris. Tried before the Hon. C. W. Robinson.

Appeal from a conviction of burglary; penalty, five years' imprisment in the penitentiary.

The opinion states the case.

*E. T. Branch* and *Brockman, Hahn & Williams,* for appellant.— On question of admitting testimony as to identification of defendant: Clark v. State, 39 Texas Crim. Rep., 152; Murphy v. State, 41 id., 120; Bowen v. State, 47 id., 37; Reddick v. State, 35 id., 463; Turman v. State, 50 id., 7; Ripley v. State, 51 id., 126; Zimmer v. State, 64 Texas Crim. Rep., 114; Downing v. State, 61 Texas Crim Rep., 519; 136 S. W. Rep., 471.

On question of admitting testimony as to license: Conway v. State, 33 Texas Crim. Rep., 327; Herod v. State, 41 id., 597; High-

tower v. State, 53 id., 486; Jennings v. State, 42 id., 78; Drye v. State, 55 S. W. Rep., 65.

*C. E. Lane,* Assistant Attorney-General, and *Richard Maury,* District Attorney, for the State.—Cited cases in opinion.

HARPER, JUDGE.—Appellant was indicted, tried, and convicted of burglary, and his punishment assessed at five years confinement in the penitentiary.

When the case was called for trial, appellant filed his fourth application for a continuance, he having theretofore been granted a continuance of the case three times. It appears that on the 8th of December, 1910, this case had been continued by appellant on account of the absence of a witness named Sullivan, and when the case was called on March 22, 1911, he had not been found, and appellant again asked for a continuance on account of his absence. The materiality of his testimony, as stated in the application, must be admitted, but it appears appellant had not used diligence to secure his attendance. It appears that appellant had issued a subpœna to Harris county to secure his attendance at the December Term, marked "inquire of F. L. Young," and process returned unserved, the sheriff being unable to find the witness. The only diligence shown is that appellant again had process issued to Harris county for the witness, marked "inquire of the same party," at the March Term, which was returned "witness not found." The State contested this fourth application and placed Mr. Young on the witness stand, who testified that the witness Sullivan had moved out of Harris county prior to the December Term. Thus, if appellant had inquired of the same source he instructed the sheriff to inquire, he would have learned in December that the witness was no longer a resident of Harris county, and the law makes it his duty to use diligence to locate the witness, especially so on the fourth application for a continuance. Again issuing process to Harris county at the March Term was not the diligence required by law, and the court did not err in overruling the fourth application, for under the testimony it does not appear that the whereabouts of the witness was then known, or he had made serious effort to learn.

The defendant was charged with entering the house of H. M. Hottle, and he was permitted to show that he was stopping at a certain hotel in Houston; he was also permitted to show the distance from the hotel to the residence of Mr. Hottle, and the hotel proprietor was permitted to testify to seeing defendant at the hotel at a given hour, when he was asked the question, if it would have been possible for defendant to have gone from the hotel to this residence at the time Mr. Hottle said the entry was made in his house, to which question the court sustained an objection, on the ground that it merely called for an opinion of the witness. In this there was

no error. When the witness Young stated the time he saw the appellant at the hotel, and Mr. Hottle stated the hour his house was entered, and the distance was shown, it would be a matter of mere opinion whether or not a person could make the trip in the intervening time, and the jury was as capable of drawing this conclusion as the witness.

While the defendant was testifying in his own behalf, on cross-examination, he was asked ''if he knew of any reason why the prosecuting witness would have had him arrested unless it was because he entered the house,'' to which the witness answered, ''No.'' This was objected to and proper bill of exception reserved, but we do not think the court erred in overruling the objection when the whole evidence is considered. If there had been any reason, it certainly would have been admissible, and in asking the question the defendant was given an opportunity to state it, and if there were none, this could be considered along with other testimony in the case. Pope v. State, 65 Texas Crim. Rep., 51; 143 S. W. Rep., 611, and cases there cited, and Branch's Crim. Law, Sec. 861.

On direct examination, defendant testified he went to Chief Murphy's house, selling a bedbug medicine that he called ''Vistol,'' and he was asked by the Chief if he had a license to sell it, and upon answering that he did not know he had to have a license, the Chief told him to come to the office. On cross-examination he was asked if he did not know that he was selling a preparation that he manufactured himself and calling it by the name of a well-known and well-advertised preparation at that time without a license; that if he did not know J. O. Ross manufactured Vistol, which questions he answered in the affirmative, but added that Ross had no trade-mark on it at that time, and on re-direct examination was permitted to state he felt he had as much right to manufacture and sell Vistol as J. O. Ross or anyone else. Defendant objected to the above cross-examination by the State. In the light of the entire examination of this witness, especially as he stated on direct examination, that he was selling the medicine and did not know he had to have a license; on cross-examination it was permissible to show, if the State could, that he knew he ought to have obtained license before selling it, as he had injected it into the case and stated he did not know he had to have a license. A defendant who becomes a witness can have his credibility tested on cross-examinaion the same as any other witness, and if he makes a statement on direct examination, the State can show by him that such statement is not true, if it can do so.

The other bills of exception in the record relate to Mr. and Mrs. Hottle, after they had identified defendant as the person who entered their house, being permitted to also testify that the day after the burglary they were called to the police station and there identified defendant, appellant contending that it is not permissible for the State's witness to thus strengthen their testimony. As to the testi-

mony of Mr. Hottle, appellant contends that the bill of exception does not show that this was drawn out on re-direct examination, and that the bill must govern. In this appellant is mistaken. The bill does show that it was on re-direct examination, stating "and on re-direct examination by the State, before any other witness had been on the stand, he was asked," etc. The record shows that Mr. Hottle on direct examination testified: "The first I knew of it, my wife nudged me and said, 'Someone is in the room,' and of course I immediately got up like any other man would do and when I raised up in the bed he was down on his hands and knees beside the bed; he broke for the window, and as I grabbed for him, he sprung out the window; I fell over a rocking chair trying to get to him and couldn't catch him and he got out of the window and got away from me; I saw him; I had my hands on him; scraped him right across the hips with my hands; it is not hardly possible that I could be mistaken about him being the man. I saw him as plain as I see you; the moon was shining." On cross-examination defendant endeavored to break down the witness' identification of defendant by showing that it was one o'clock at night; that the shutters to the windows on the side next to the electric light were closed; that witness only saw defendant as he went a distance of about twelve or fifteen feet and jumped out a window, questioning the witness in every conceivable way in an attempt to create the impression on the minds of the jury that it was impossible for the witness to identify certainly the person who was in the room, and eliciting from the witness "that defendant might have a twin brother who resembled him, and he might be mistaken in that way—that there was a possibility for him to be mistaken, and it was the first time he had seen defendant until he saw him at the police station."

On re-direct examination the State was permitted to show the witness was at the police station on the second evening after the burglary and then identified him as the person who had entered his house. Mrs. Hottle, however, did testify to these facts on direct examination. She testified: "I recognize some one in the court-room as being that man; he is the man at the corner of the table. (Points to defendant.) I am pretty positive that is the man; I had never seen the gentleman before but I saw him at the jail for the first time after that; I could not really say how many were at the jail when I saw him; there were several there besides me; some one phoned our residence and told us they had a gentleman down there; I walked into the Police station; that gentleman was sitting in the chair; others were sitting around and some standing and he was the one that I picked out among all the rest; I had to look at him; I recognized him there; nobody made any suggestions to me; when I saw him there he was the very description of the man that I had seen in my room that night; at that time he had long curly hair; he is the gentleman that was in my room with the exception that he had

long curly hair; when I saw him at the station his hair was long like it was the night he entered our house; his hair, at the time I saw him at the police station, was in the same condition it was in as the night that he entered my room.''

The defendant testified that he was not the man, and said he was at the hotel at this hour, and introduced evidence on this alibi. On the above issue he said: ''We walked down to the station and they went to guying me about selling bed-bug medicine. I did not think anything of it; after talking awhile one of the officers called me aside in a little dark room. I thought he wanted to speak to me privately; when I came out they had hung up the receiver; I stayed there and there was a woman and a man came there and they pointed me out and asked them if I was the man and she said she kinder believed I was; she said, put your fingers on the window and stoop over; I did not have any idea as to what she meant; I was puzzled when she started that deal; she hesitated around there and finally she says, I believe that is him. . . . There were other people in the room at the time I was identified; they pointed me out to her and asked her if I was the man; I don't know that she picked me out; they pointed me out to her and she could not help but pick me out; can't say that she looked over the whole room; don't know which way she looked; sure she picked me out of those people as being the man; never saw this woman before in my life; never saw her before that time to know her.''

It may be said, and doubtless is true, that this testimony would not have been offered by the defendant if the State had not prior thereto offered the testimony of the identification of defendant at the police station by Mr. and Mrs. Hottle, and is this testimony of that character of corroborative evidence that the law says will not be admitted unless the opposite side has sought to impeach the witness? Appellant cites us to the case of Reddick v. State, 35 Texas Crim. Rep., 463. In that case the sheriff was permitted to testify that the prosecuting witness identified the defendant at the jail, and fainted on sight of him. This was held to be inadmissible, and is in line with our authorities, but in this case it was not sought to introduce any officer or any other person to support or corroborate Mr. and Mrs. Hottle, consequently that case it is not in point. Likewise the case of Clark v. State, 39 Texas Crim. Rep., 152, cited by appellant, is not in point. In that case the justice of the peace was introduced to corroborate the identification of defendant by the prosecuting witness. This was held to be inadmissible, in the absence of any effort to impeach the prosecuting witness. However, while these two cases do not support appellant's contention, yet apparently the cases of Murphy v. State, 41 Texas Crim. Rep., 120, and Bowen v. State, 47 Texas Crim. Rep., 137, do support his contention. The holding of this court in the Murphy and Bowen cases, if so construed, is in direct conflict with the former decisions of this court in the cases of

Fulcher v. State, 28 Texas Crim. App., 465, and Land v. State, 34 Texas Crim. Rep., 330, and other cases cited in those opinions, and would enlarge the rule announced in the Reddick and Clarke cases. The same learned judge who wrote the opinions in the cases of Murphy and Bowen also wrote the opinion in the Land and Clarke cases, and yet in neither opinion refers to the contradiction existing in those decisions. So it is for us to decide which of the opinions correctly announces the correct rule of evidence. In the Reddick case, wherein the case of Fulcher v. State and other cases are referred to and overruled in so far as they were in conflict with the opinion in that case, the rule announced has no application to this case, for herein no third person was introduced to corroborate Mr. and Mrs. Hottle, and the question here is, as Mr. and Mrs. Hottle identified defendant on trial, would they in addition to identifying him at that time, be permitted to testify to having met him on another and different occasion? We do not think it would be questioned they would have been permitted to testify that they had known defendant since his youth, if that had been so, in support of their ability to identify him on the trial, and if so, by what rule of law would it be erroneous to permit them to state that within forty-eight hours after their house was burglarized they saw and recognized defendant as the person who was in their room, and then caused his arrest? This, it is true, adds great strength to their identity of the person on trial as the guilty person, but why should not a witness be permitted to detail all facts within his or her personal knowledge which would show or tend to show that the person on trial was really the guilty person? Would the fact that the additional facts within their knowledge render their testimony more worthy of credit, render such testimony inadmissible? We think not. The testimony objected to in this case elicited no new fact—it was but detailing other acts of observation by them that rendered their identification on the trial as more probably true. It is not a *corroboration* of the witness' testimony, it is but eliciting all facts within the knowledge of the witness as to the probable truth of his testimony. The State was endeavoring to render credible the testimony of the witnesses that they recognized the defendant as the person who entered their room, while the defendant was endeavoring to show that it was incredible. The State showed by them that they recognized him the first time they came in contact with him thereafter; the defendant was eliciting that it was in the night, the light was perhaps feeble, and their chances of observation were but slight. Now, if the defendant could show these facts as breaking down the credit of the witnesses, why could not the State elicit other facts within the breasts of the witnesses which tended to show they were deserving of credit?

The very first article of our Code of Criminal Procedure provides that it is intended to embrace rules applicable to the prevention and prosecution of offenses against the laws of this State, and to make

the rules of proceedings intelligible to the officers and all persons whose rights are affected by them.  It seeks to bring to the investigation of each offense on the trial all evidence tending to produce conviction or acquittal.  The object of a trial is to arrive at the truth in each instance, and any facts within the personal knowledge of a witness bearing on the point in issue may be elicited which would tend to show the truth or falsity of his testimony having a direct bearing on the question being inquired into.  We think the rule announced by Judge Hurt in the Reddick case, and by Judge Henderson in the Clark case, is more in accord with the decisions of this court and the great weight of authority than the others herein recited, and to the ruling in these two cases we adhere, that is, a witness may detail all facts within his personal knowledge bearing on the issue in this case—the identity of defendant, but other persons cannot be called to corroborate such witness as to prior statements or identifications, unless it is sought to impeach the witness in some of the ways known to the law.  And the rule announced in the Murphy, Bowen, Land, and other cases is so limited, and the law declared to be as announced in the Reddick case.

Another thing that would render the testimony admissible is that it appears that on the trial the appearance of defendant had, in a measure, been changed by a change of clothes, cutting his hair, etc.  Under such circumstances a picture of the defendant taken about the time of the alleged offense has been held to be admissible on the issue of identification.  Sections 518 and 544, Wharton's Crim. Law, and cases cited therein; Young v. State, 49 Texas Crim. Rep., 207.

The court's charge on alibi is in accordance with the form frequently approved by this court.

The judgment is affirmed.

*Affirmed.*

·[Rehearing denied November 13, 1912.—Reporter.]