## JESUS GONZALES v. THE STATE.

### No. 3127. Decided June 3, 1914.

### Rehearing denied June 24, 1914.

**1.—Murder—Companion Case.**

Where the same questions, with reference to the introduction of evidence and the charge of the court, were raised in a companion case and adversely decided to the appellant, no further discussion of the same is necessary. Following Serrato v. State, recently decided.

**2.—Same—Evidence—Supporting Testimony.**

Where, upon trial of murder, a State's witness who had identified the defendant and others as doing the shooting was subjected to a severe cross-examination with the effort to impeach him as to such identification, there was no error in permitting the State on redirect examination and by other witnesses to prove that very soon after the transaction the said witness pointed out to them the same parties which he identified upon the trial of the case. Distinguishing Clark v. State, 39 Texas Crim. Rep., 152; Reddick v. State, 35 Texas Crim. Rep., 463, and other cases. Qualifying Murphy v. State, 41 Texas Crim. Rep., 120; Bowen v. State, 47 Texas Crim. Rep., 137. Following Weaver v. State, 68 Texas Crim. Rep., 214.

**3.—Same—Charge of Court—Objections—Article 743.**

Where, upon trial of murder, the court gave a full and correct charge on all the issues raised by the evidence, and there was no objection to the same at the time of the trial nor to the refusal of the charge requested, there was no error under article 743; besides, no injury was shown. Davidson, Judge, dissenting.

**4.—Same—Evidence—Newspaper Manifesto—Conspiracy.**

Where, upon trial of murder, the evidence showed that the defendant and others had banded themselves together for an armed invasion into the Republic of Mexico, during which deceased was killed; that defendant was induced to join said company from articles he read in a certain newspaper in the Spanish language, which disclosed the purpose of the conspiracy, there was no error in admitting in evidence a translated copy of said paper.

**5.—Same—Evidence—Identification—Practice.**

Where, upon trial of murder, where the evidence showed that the defendant and others had conspired together for an armed invasion into the Republic

of Mexico, during which deceased was killed, and the question of defendant's identification and that of his companion who did the actual killing of the deceased was an issue in the case, there was no error that the court had the other defendants brought into court for the purpose of such identification, although defendant objected thereto; besides, the matter resulted to his advantage. Following Benson v. State, 69 S. W. Rep., 165.

**6.—Same—Charge of Court—Limiting Testimony.**

Where the State's testimony was for supporting the testimony of a State's witness as to the identity of defendant as one of the four men who actually killed deceased, there was no error in the court's failure to limit such testimony; besides, the objections to the charge were too general.

**7.—Same—Argument of Counsel.**

Where the argument of the district attorney to which defendant objected, to the effect that defendant was a member of a certain Mexican faction, etc., was based partly upon the evidence and was partly in response to the argument of defendant's counsel, there was no error.

Appeal from the District Court of LaSalle. Tried below before the Hon. J. F. Mullally.

Appeal from a conviction of murder; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*W. F. Ramsey* and *C. L. Black* and *J. Albert Strawn* and *Magus Smith* and *F. B. Earnest* and *John W. Willson* and *R. W. Hudson,* for appellant.—On question of bolstering up testimony: Riojas v. State, 36 Texas Crim. Rep., 182; Webb v. State, 29 Ohio State, 351; Reddick v. State, 35 Texas Crim. Rep., 463; Bowen v. State, 47 id., 137. Ripley v. State, 51 id., 126, and cases cited in opinion.

On question of argument of counsel: Bearden v. State, 79 S. W. Rep., 37; Davis v. State, 54 Texas Crim. Rep., 236; Tillery v. State, 5 S. W. Rep., 842; Exon v. State, 26 S. W. Rep., 1088; Hunnicutt v. State, 18 Texas Crim. App., 498; Weatherford v. State, 21 S. W. Rep., 251; Fuller v. State, 17 S. W. Rep., 1108.

On question of court's charge on principals and refusal to charge on accomplice: Davis v. State, 55 Texas Crim. Rep., 495; O'Quinn v. State, 55 id., 18; Jones v. State, 57 id., 144; Wright v. State, 40 id., 45; Bollen v. State, 48 id., 70; Glascow v. State, 50 id., 635; Clark v. State, 131 S. W. Rep., 556.

On question of admitting in evidence a newspaper showing political opinions of defendant: Cases cited in opinion.

On question of burden of proof: Phillips v. State, 26 Texas Crim. App., 228; Black v. State, 1 Texas Crim. App., 368.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted of murder and his punishment assessed at life imprisonment.

This is a companion case of that of J. A. Serrato, decided by this court May 6, 1914, and also that of Lino Gonzales, decided May 13,

1914. In fact, appellant is one of the same persons indicted with said Serrato and Lino Gonzales and others in the same indictment. In said two cases decided we gave a rather full statement of the facts. The main witnesses, especially for the State, in those two cases were the same witnesses who testified in this and they gave substantially the same testimony in each case. Of course appellant did not testify in either of those cases. He did in this. Neither of those parties, of course, testified in this. Each of them did testify in their respective cases. Appellant in this case testified he was not one of the four persons whom Buck swore killed the deceased, Ortiz. In other words, by his testimony he substantially put himself in the same attitude that Serrato and Lino Gonzales put themselves. By Buck's testimony, however, the appellant in this case was shown to be one of the four persons who actually shot and killed deceased. In that respect and practically in that only, does this case differ from the others. Treating this case from appellant's standpoint what was said in the other cases equally applies to him in this. However, from the State's standpoint in this case he was, without doubt, one of the persons who actually shot and killed Ortiz. Substantially the same questions were raised and passed upon in the other cases that are raised in this, so far as the introduction of evidence is concerned, and the charges of the court given, and the complaints of the charges which were given and not given. No further discussion of any of those questions is necessary in this case.

There are some questions raised in this case that were not in either of the other cases, which we will discuss and decide.

Eugene Buck in this, as in the other two cases, was one of the State's most material, if not the most material, witness. In his direct testimony, when first introduced by the State, he positively identified appellant as one of the persons who captured and kidnaped him and deceased, Ortiz, and one of the persons who tied his and the hands of Ortiz behind them with ropes; and he identified him as one of the four persons who actually shot and killed deceased. He also identified Rangel, Cisneros, and Alzalde as the other three. His description of these four persons, in his direct testimony, was rather general. When appellant took him on cross-examination, his attorneys required him to testify in the minutest details the actual description of each of said four persons (unless it be Rangel),—their dress, their hats, their size, their age, color of their hair, their voices, and every other special minute detail that could be thought of. Also particularly what appellant and each of the others said from first to last. They also had him to go into the minutest details of some of the other persons who captured him and Ortiz and particularly of what may be designated "a little Jap-looking Mexican fellow." It is perfectly evident by this cross-examination, which is very lengthy, that they sought to show by him that he was mistaken in testifying that appellant was one of the four persons who shot and killed the deceased and they were seeking to show that he mistook appellant for the little Jap-looking fellow and that it was the little Jap-looking Mexican and not appellant, who was one of the four who

shot and killed deceased.  They then cross-examined him as to his testimony on the point of identity of the appellant on one of the previous trials and attempted to show, and the evidence tended to show, by this cross-examination, that his identity of appellant on the previous trial was somewhat different or conflicting from what it was on this trial. They also by this cross-examination sought to show that one of the persons who was killed when ·the crowd was captured, two days after the killing of Ortiz, by the United States soldiers and the sheriff and his posse, was the person he now identified and testified was appellant, and that on the former trial he had identified that person, instead of appellant, as one of the four who shot and killed Ortiz.  The appellant made so much headway on these points, tending to contradict Buck, that when he was turned back to the State for redirect examination the district attorney, without objection by appellant, had the sheriff to bring into open court the eleven other defendants charged in said same indictment with murdering deceased and had them to take seats around in the court room.  The district attorney thereupon had the witness Buck to point out the three persons other than appellant whom he claimed were the three with appellant who shot and killed the deceased. The witness did this.  After looking at all the men he picked out and testified that Rangel was one, Alzalde was another, Martinez and appellant the others.  Immediately after this the witness was turned back to appellant and recross-examined, and they at once went into the examination of the witness again.  They asked him if he had not made a mistake in pointing out the four men whom he claimed did the actual killing in identifying Martinez as one of them, instead of Cisneros.  He again examined the men and said that in his designating Martinez as one of them he was mistaken; that Cisneros, instead of Martinez was one, and that in designating Martinez he had made a mistake and that it was in fact Cisneros.  They then took him up and went into a long cross-examination as to what he had testified as to the identity of these two persons and appellant on the other trial.  They had the stenographer to reproduce and read to him his testimony on the previous trial.  This was gone into elaborately and to a great extent, the appellant seeking to show, and the evidence ·tending to show, that his testimony on the previous trial in identifying the parties was different and conflicting from that on this trial, the State seeking by it to show that there was no material difference.  Appellant also sought to show by another witness, Thornton, and their cross-examination of him without question tends to show, that said Buck identified to him the little Jap-looking Mexican who was killed when they were captured as one of the four, instead of appellant, who shot and killed deceased.  Taking the record as a whole, or taking appellant's bills of exceptions by themselves alone, they unquestionably show that appellant sought to impeach the witness Buck in three particulars:  First, that he had identified Martinez instead of Cisneros as one of the four who did the actual killing. There is no question but that said witness on this trial did at first identify Martinez as one of the four and later claimed to be mistaken

as to that and then testified positively that Martinez was not one of the four, but that Cisneros was instead; second, that on one of the former trials by the description he gave, he identified the little Jap-looking Mexican as one of the four, instead of appellant; third, by the witness Thornton it was shown, or his evidence tended to show, that Buck before this trial had identified the little Jap-looking Mexican, the one who was killed when they were all captured, as one of the four, instead of appellant; whereas, he now testified that appellant and not the little Jap-looking Mexican, was one of the four. There can be no question but what they sought to impeach, and the evidence tended to impeach, the witness Buck on these three points. The bills, and the arguments about them, clearly and distinctly show this. There is no principle or rule better established in this State, than that when this is the case the State can bolster up its witness thus impeached, by showing that shortly after the transaction he made statements to others, similar or to the same effect as that now testified to by him on the trial. Mr. Branch, in his Criminal Law, section 874, collates some of the authorities on this point. There are a great many, but we deem it unnecessary to collate and cite them. So that the court in this case did not err in permitting the State to prove by the witnesses Knaggs, Gardener, White and Campbell, in substance and effect, that very soon after the capture of appellant and all his associates, the witness Buck did point out to each of them the said four persons he now testifies were the persons who shot and killed the deceased, and appellant's bills 58, 59, 62, and 49, raising these questions, show no error. What we hold on this question is not in conflict on this point with Clark v. State, 39 Texas Crim. Rep., 152; Reddick v. State, 35 Texas Crim. Rep., 463, and other cases cited and relied upon by appellant. Appellant, in citing and relying upon Murphy v. State, 41 Texas Crim. Rep., 120, and Bowen v. State, 47 Texas Crim. Rep., 137, overlooks the fact that the holding of the opinions in those two cases were modified, if not overruled, by this court in Weaver v. State, 68 Texas Crim. Rep., 214, 150 S. W. Rep., 785.

This case was tried in October, 1913, long after the Act of April 5, 1913, amending articles 735, 737, 743, and adding article 737a to our Code of Criminal Procedure, went into effect, whereby it is expressly required that objections to the charge of the court of either commission or omission, shall be made before the argument begins. The record in this case does not show that any objections were thus made to the court's charge. The judge gave a full and correct charge on circumstantial evidence. He also affirmatively required the jury to believe beyond a reasonable doubt every essential fact to show appellant's guilt before they could find him guilty, and if they did not so find to acquit him. In addition, he told the jury that defendant was presumed to be innocent until his guilt was established by legal evidence beyond a reasonable doubt and in case they had a reasonable doubt as to his guilt to acquit him. Still in addition, that in all criminal cases the burden of proof was on the State. There is in the record a special charge, asked by appellant but refused by the court, to the effect that the burden of

proof rests upon the State throughout the trial and never shifts to defendant. There is nothing to show that this charge was requested before the court read his charge to the jury and the argument had been concluded. It seems, therefore, very doubtful whether the question is raised in such a way that it can be considered by this court. We think not. But if it was asked and refused in the proper time, clearly under the statute, article 743, as it now is, the refusal of the court to give appellant's said special charge presents no such error as would authorize or require this court to reverse this case. Most, if not all, old cases cited by appellant which indicate that it was error to refuse to give such charge were rendered before the amendment of 1897 of article 743, and we think have no application now. We fail to see how it could possibly have injured appellant not to have given said charge.

The appellant, in his direct testimony, among other things, said that he was a subscriber to the newspaper "Regeneracion" and that he received and read that paper; that said Captain J. N. Rangel must have gotten his name from the subscription list of that paper and that Rangel wrote to him and that he went and joined Rangel and his company, being induced by what was published in said paper. On cross-examination he stated that one of the principal things that induced him to join said company, etc., was the articles in said paper. One of the copies of the paper was then exhibited to him and he identified it as one of them. A translation of this article was thereupon introduced in evidence. He further testified that the principles announced in that paper and of the Liberal party therein specified was the one to which he belonged and joined said Rangel's company to carry out. The article introduced is quite lengthy. We deem it unnecessary to copy all of it. A part of it is:

"We Liberals proclaim that everything shall be for everybody, and that each producing agent shall consume not in accordance with his ability but in accordance with his necessity. In order to attain these ends, we Liberals will fight to snatch, to grasp from the hands of the rich the land, the waters, the mountains, the mines, the factories, the shops, the railroads and all other means of transportation, through the medium of arms, leaving everything in the hands of the poor so that these can agree and will organize a protection free from all masters of every kind."

The court committed no error, as claimed by appellant in his bills 63 and 64, in permitting the State to have him testify, as shown above, and to introduce the translated copy of the paper to which he was a subscriber and which he read and which he said announced the principles which he and Rangel and his company were intending "to do" and fight for in Mexico.

There is nothing else in this record that requires any discussion. There being no error, the judgment will be affirmed.

*Affirmed.*

Davidson, Judge, dissenting.

ON REHEARING.

June 24, 1914.

PRENDERGAST, Presiding Judge.—In his motion for rehearing appellant presents but some of the same questions originally raised, and others not mentioned specially in the opinion heretofore. We will discuss in this opinion such of these as we deem necessary.

In discussing his bills 49, 58, 59 and 62 we stated he made no objection when the court had the eleven other defendants brought into court for the purpose of identification of the four who did the actual killing of Ortiz, as claimed by the State's witness Buck. He now calls our attention to the fact that he did object to their being brought in, as shown by his bill No. 45. We find that he did object to said parties being brought into the courtroom, and this court was mistaken in the original opinion in saying he did not object. His objections, shown by bill 45, are: "We do not care to bring these parties in here and have him identify them in the trial of this defendant. We do not see that it is material; it would just go to detract the minds of the jury from this trial and we do not think it advisable." The point has been expressly decided against appellant in McIver v. State, 37 S. W. Rep., 745; Benson v. State, 69 S. W. Rep., 165. So that this court's incorrectly stating that he made no objection, did not and could not affect nor change the decision of the question. Besides, the bringing in the parties resulted to his advantage decidedly, because Buck made a mistake at first in the identification of one of the parties, as shown in the original opinion.

He also specially calls our attention to his bill of exceptions No. 13, wherein it is shown that he objected to the charge of the court, because it "failed and omitted to instruct the jury distinctly for what purpose they should consider the evidence of Gardner, White, Allen, Knaggs, Wilcox, Barnard, Boynton, Decker, Dickens and Campbell," claiming the evidence of these witnesses "did not establish the corpus delicti and was not offered for such purpose, nor to prove defendant committed the offense, and that the law required that such evidence be limited in the charge and that the court's charge should state for what purpose such evidence had been admitted and for what purposes the jury may consider it." The testimony of several of these witnesses was very material to establish many circumstances and facts which tended to make the case against appellant. The testimony of others was for bolstering the testimony of Buck as to the identity of appellant as one of the four who actually killed deceased. It would have been improper for the court to have given any such charge as this bill points out. Besides, to have called especial attention to the supporting testimony of Buck would have been on the weight of the evidence and against appellant. His objections were too general to specifically call the court's attention to any charge applicable to the testimony of these respective witnesses.

He also calls our attention to his bill of exceptions No. 5 wherein he

complains of this language of the district attorney: "That defendant, Jesus Gonzales, was a member of the Zapata faction in Mexico, whose principles were murder, rapine and plunder," used in argument. The court, in allowing the bill, thus qualified it:

"A red flag with white lettering on it was introduced in evidence by the State, and defendant, while on the stand, identified it as the flag of the Liberal party of Mexico, his political party in Mexico. The district attorney stated the following: 'Was he fighting for Huerta? No, because the flag of Huerta is the flag of the Mexican Republic. Was he fighting for Carranza? No, because the flag of Carranza is the tri-color of Mexico. He was fighting for Zapata, the leader of the Partido Liberal in Mexico, the flag of murder, rapine, and plunder.' This remark was made in answer to argument of the attorneys of the defendant as follows: Judge Earnest's speech was devoted exclusively to a historical sketch of the conditions of the Mexican people, from the time of Cortez, recounting their oppressed conditions from the time of the Spanish, and Judge Earnest did not discuss the evidence. Earnest also spoke about the French Revolution. The speech of Mr. Smith referred to the condition of the Mexican people and their struggle for liberty comparing the defendant's to other revolutions for liberty, mentioned the battle of San Jacinto among other things. Mr. Strawn also spoke at length about the present condition in Mexico and defended the Mexicans in the present struggle against Huerta, as a tyrant. And the district attorney stated that the red flag was the flag of Zapata in answer to the argument of Mr. Smith, who, in his speech, asked the question that when in history could it be shown that the red flag had ever been used for a bad purpose?" The bill as qualified shows no error.

In this connection we call attention to what the principles of the party, which appellant joined and was attempting to carry out, were, and the extract from the paper "Regeneracion" a part of which is copied in the original opinion.

The motion is overruled.

*Overruled.*